In this view, there is no room for speculation as to whether the testator measured his word "issue" by his own conception that his other word "parent" bore its narrow lexicographical meaning or included a grandparent. It cannot be said that the word "represent" was aimlessly introduced into this phrase. The presumption is to the contrary, and it is confirmed by the general rhetoric of the will and by contrast with, at least, one other phrase in which an estate is given without qualification.

The decree should provide for the payment to Mrs. Allan of the entire share to which her father would have been entitled.

Decreed accordingly.

(78 Misc. Rep. 699.)

### In re PATTISON'S WILL.

(Surrogate's Court, Westchester County. December, 1912.)

WILLS (§ 290*)—REVOCATION—PRESUMPTION.

Where a will was executed in triplicate, the presumption that the copy traced to the possession of testatrix, which could not be found after her death, was destroyed with intention to revoke, was overcome by her declaration, made on the opening of a safe within which were found a former will by her and another by a deceased sister a few days before the death of testatrix, that the wills were at Williams College, and, the provisions of the will being natural and the absence of the third copy being accounted for, the copy produced by Williams College and shown to have been in possession of its treasurer at the death of testatrix will be admitted to probate.

[Ed. Note.—For other cases, see Wills, Cent. Dig. § 663; Dec. Dig. § 290.*]

Proceeding to probate a writing purporting to be the last will and testament of Sarah H. Pattison, deceased. Probate decreed.

Frank L. Young, of Ossining, for proponents.

James L. Bishop, of New York City (Charles H. Beckett, of New York City, of counsel), for Gardiner Pattison and others.

Gescheidt & Toomey, of Mt. Vernon, for Francis Larkin, special guardian.

MILLARD, S. Sarah H. Pattison died at Ossining, Westchester county, N. Y., on the 29th of November, 1911; that said Sarah H. Pattison left her surviving George S. Pattison, Edwin Pattison, Louise Pattison Chenoweth, Gardiner Pattison, William J. Pattison, Josephine Pattison, Samuel Pattison, Anna M. Tarbet, Elmer E. Gibson, Mary Hoffmeier, Cornelia I. Osborn, Leslie Boughton, Carrie Boughton, and Newell Boughton, her heirs at law and next of kin; that a petition was duly filed in this court praying that a paper writing bearing date the 14th of March, 1883, subscribed at the end by said Sarah H. Pattison, in the presence of Charles F. Bauerdorf, John F. Quinn, and William Malloy, purporting to be the last will and testament of said Sarah H. Pattison, be admitted to probate.

The evidence in this case discloses to my satisfaction that this paper writing, so produced, was executed in triplicate by the said Sarah

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

H. Pattison at the time it bears date; that one of said counterparts or examples was left with David Dudley Field, another of said examples or counterparts was sent by said David Dudley Field to Franklin Carter, former president of Williams College, and the third of said counterparts or examples was delivered to the said Sarah H. Pattison and taken away by her at the time of execution; that the paper writing produced in this proceeding was at the time of the death of said Sarah H. Pattison in the possession of the treasurer of Williams College, at Williamstown, Mass., to whom it had been delivered by Franklin Carter, the former president, some time after he had received it from David Dudley Field, attorney for said Sarah H. Pattison, by mail, as above mentioned.

The testimony further discloses that an examination through the papers of the old firm of which Mr. Field was a member, made by Mr. Bauerdorf, failed to disclose the copy which had been left with them, but it was entirely possible that Mr. Field, when he removed his papers, had taken it with him, and I consider that that is a very plausible and most probable solution of the question as to what became of that counterpart, and, by reason of the fact that Mr. Field's papers have been scattered and that every opportunity for their being mislaid or lost has been offered, I consider that that counterpart or example has been satisfactorily accounted for.

A few days after the death of Elizabeth A. Pattison, who died 10 days before her sister, Sarah H. Pattison, said Sarah H. Pattison sent for Mr. Frank L. Young, the attorney for the proponents in this matter, undoubtedly to take up the matter of the probate of her sister's will, and a few days later, and less than two days before her death, an attempt was made to open the safe in which their papers were supposed to be kept; but as they were unable to do so, she having apparently lost the combination, if she ever had it (her sister being the one who was accustomed to take care of such matters), it was necessary to send for an expert, and a few days later the safe was opened in the presence of Mr. Reilly, his daughter, Mr. Young, Mr. Farren, and the said Sarah H. Pattison. No wills were found except two, one executed by Elizabeth and the other by Sarah H. in 1874, which wills have been offered in evidence in this case. The result of the examination was that no other wills were found in the house and that Mr. Young spoke to Miss Pattison about the matter and she said the wills were at Williams College.

There can be no doubt that it is the law of this state that, when a will traced to the testator's possession is not forthcoming on his death, the presumption is that it was destroyed by him with the intention of revoking it and that presumption arises in this case where what purports to be a will was executed in triplicate and the one which was in the possession of the testatrix is not produced or accounted for.

On the part of the proponents it is admitted that this presumption exists, but they claim to have overcome it by the declaration of Sarah H. Pattison, at the time when the safe was opened.

This declaration was testified to by Miss Reilly, Mr. Young, and Mr. Farren, and I am satisfied, convinced as I am that it was the in-

tention of this woman that this will should be probated and that her property should go as provided in said paper writing, that this evidence overcomes the presumption in this case. These statements made less than two days before her death, and at a time when neither the counterpart delivered to her nor the counterpart of the sister's will could be found in the house, must be considered competent to show that the will at Williams College was still the one which she recognized as hers.

The counsel for the contestants moved to strike out all the testimony given by the witnesses Farren, Reilly, and Young, on pages 29, 33, and 49 of the minutes, and I reserved decision thereon until the case should be decided (because it was practically deciding the case itself to rule upon the admission or rejection of this testimony), and I now deny the said motion and grant an exception to the contestants' attorneys.

We have in this case a will as carefully and as properly drawn as any that has ever been offered for probate. It shows upon its face, however, that it was executed in triplicate. The testimony offered, as I stated before, I believe to be competent to overcome the presumption of the law that the paper writing was revoked by the testatrix. In view of the fact that she had no immediate relatives or friends with whom intimacy of any kind existed, the provisions of the will seem entirely natural, and, while the whereabouts of the particular counterpart delivered to the said Sarah H. Pattison is not known or shown in this proceeding, I consider that in view of all the circumstances of the case her declaration shows sufficiently that the will was not revoked by her.

For this reason I have decided that the will of Sarah H. Pattison is entitled to and should be admitted to probate.

Findings and decree in accordance with this memorandum will be signed.

Probate decreed.