### HOWARD et al. v. COMBS.
### No. 13650.

Court of Civil Appeals of Texas.
Fort Worth.

Jan. 14, 1938.

Grindstaff, Zellers & Hutcheson and R. B. Hood, all of Weatherford, for appellants.

Preston Martin, of Weatherford, and Goree & Rice and Wm. S. Harris, all of Fort Worth, for appellee.

. SPEER, Justice.

This is an appeal from the district court of Parker county denying the probate of a will.

Nolan Queen, an attorney of Weatherford, filed a short form application in the county court for the probate of the last will of Mrs. Luvenia Reynolds, deceased; the application contained all statutory requisites, including the allegation that the applicant was named in the will as independent executor. The will was tendered with the application.

A. B. Combs, a brother of testatrix, filed an objection to the probate of the will, alleging as reasons: (a) Because the propounded will was not the original, as executed by testatrix, but was a carbon copy thereof; (b) because testatrix died intestate, she having destroyed and revoked the original will, of which the propounded instrument was a copy, prior to her death. Further allegations were made in said objections, to the effect that testatrix was the surviving wife of W. H. Reynolds, deceased; that W. H. and Luvenia Reynolds had acquired a community estate during the lives of both; that they had no children; that W. H. Reynolds died intestate prior to the death of his wife; and that the latter took the common property in fee simple under the law of descent and distribution. That contestant, being a brother of testatrix, was interested in the estate and entitled to contest the probate of the will.

The will was duly admitted to probate by the county court and contestant appealed to the district court.

Before trial was had in the latter court; certain heirs of W. H. Reynolds intervened as proponents, with Nolan Queen. With permission of the district court, Mr. Queen withdrew from the case as proponent, and by order of the court, interveners, Mrs. Virginia Howell, a widow, Oscar Reynolds and Janet Reynolds Howard, joined pro forma by her husband, were made proponents of the will.

A replication to contestant's pleadings was made, in which it was alleged: (1) The adoption by them of the original application by Mr. Queen, to probate the will. (2) That W. H. and Luvenia Reynolds had lived together as husband and wife for more than fifty years and had no children born to them, and that all property on hand at their respective deaths belonged to the community. (3) That prior to the death of W. H. Reynolds, he and his wife had, for a valuable consideration, entered into an oral agreement and contract to the effect that neither would make a will during the lifetime of both, so that the survivor would receive the full benefit of the entire estate during his or her lifetime, but that the survivor would make a will leaving one-half of the property then on hand to the heirs of the husband and wife respectively; that both parties fully performed the contract and agreement, by making no will during the lifetime of both; that Luvenia Rey-

nolds, the surviving wife, accepted the terms of the contract and received the whole of the estate at the death of her husband. (4) That after the death of her husband, she recognized the agreement and executed the will now propounded, which is in keeping with the terms of the agreement with her husband. (5) That said will was executed by testatrix in duplicate originals and both left with her attorney, Mr. Queen, with instructions to see that her will was carried out, regardless of what happened. (6) That if testatrix ever destroyed one of said original duplicate wills, it was not with the intention on her part to revoke the other, left with her attorney. (7) That under the terms of the performed agreement between her and her deceased husband, testatrix was estopped from revoking the will made, and the contestant is estopped from asserting its repudiation by her. (8) That the duplicate original will left by testatrix with Mr. Queen, her attorney, was never revoked, nor were the instructions given him in regard to it withdrawn.

A trial of the issues was had to a jury in district court. Proponents proved by Mr. Queen that he had been the legal advisor to Mr. and Mrs. Reynolds for about fourteen years; that he had discussed their property rights with them both; he had also discussed with them the matter of wills. Proponents offered to prove by Mr. Queen that W. H. Reynolds had told him that he and his wife (testatrix) had agreed that neither of them would make a will during the lifetime of both, but that the survivor should take the whole estate during his or her lifetime and that such survivor should make a will, which at his or her death would divide the property equally between his and her heirs. Proponents also attempted to prove by the witness that testatrix told him of the agreement and that she wanted her will drawn in a way that would carry it out. Upon objections by contestant that such statements were hearsay and immaterial, the testimony was excluded from the jury. The rulings of the court are before us on bills of exception and assignments of error.

Proponents proved the execution of the will propounded, along with the fact it was executed in duplicate originals, simultaneously one with the other, before the same attesting witnesses, viz., Miss Burns and Mrs. Mooty; further proof was made that both instruments were left with the attorney, for safekeeping; that testatrix told the attorney she did not want anybody to know she had made a will and charged him to tell no one; that testatrix said she did not want to take it to her home nor place it in the bank for fear her brother would find it out; that she did not want to be worried and tormented about it. That the will was executed on November 15, 1934, and that in January or February following, Miss Burns, who worked for testatrix, called at the lawyer's office and said Mrs. Reynolds wanted her copy of the will. Each of the instruments had been placed in separate envelopes and labeled alike; that the attorney, not knowing which was the one made by the typewriter ribbon and which by the carbon paper, gave Miss Burns one of them; that testatrix told Mrs. Mooty, a few days later, she had destroyed the will. That Mrs. Reynolds died and Mr. Queen made application to probate the will and did not open the envelope containing it until he went to the county clerk's office to file it.

When the will was offered in evidence, contestant objected upon the grounds, that the instrument purported to be a copy of an original one and the latter had not been properly accounted for, and further that the proof already offered by proponents showed the will had been revoked by its destruction by testatrix. The objection was sustained by the court, to which exception was taken by proponents. The testimony was closed immediately after this ruling was made, and upon request by contestant, an instructed verdict was rendered by the jury and judgment entered denying probate of the will. New trial was denied and notice of appeal given by proponents. Appeal was perfected and the several rulings of the court in excluding testimony and instructing a verdict are present for review.

There is no conflict in the testimony worthy of note. In fact, contestant offered none other than to cross examine proponents' witnesses.

We have concluded that this case should be reversed and remanded for another trial, and therefore shall refrain, as far as possible, from commenting upon the testimony and its weight, yet we feel that a definite expression of our views on some phases of the case should be stated.

█ The trial court instructed a verdict for contestant, and in considering the assignment challenging that act, the weight or preponderance of the testimony is not the

test, but we should discover whether or not there was any testimony of probative force, to the contrary. In considering the peremptory instruction, we must of necessity bear in mind that the reason the will was not in evidence was because it was excluded by the court, upon the objection that it was a carbon copy, and the original had not been accounted for, and further because it was shown to have been revoked.

We do not believe that there is any real difference in the legal effect of the will offered in evidence, because it showed to have been written with carbon paper, and what it would have been if written from the ribbon and types of a machine, or even written by hand with pen or pencil. The instrument purported to be regular in form and contained matters which indicated that testatrix recognized and ratified the agreement made with her husband. Whether or not the will had been revoked by testatrix became an issue also, and this question is involved in the peremptory instruction.

The will tendered in evidence could have been legally probated if not revoked or canceled by the testatrix; the burden of proof was on proponent to show it had not been revoked; this required a determination of facts, to enable the court to reach a conclusion of law.

By article 8285, R.C.S., it is provided that after a will has been executed, as was the one here under consideration, it can only be revoked by a subsequent will, a declaration in writing executed with the same formalities as a will, or by the testator destroying, canceling, or obliterating the same or causing it to be done in his presence. The record here shows conclusively that testatrix had executed two wills, which we think were of equal dignity; they were simultaneously executed and were identical in terms. It also appears that testatrix stated to one of the subscribing witnesses that she had destroyed the will. This statement is all the testimony before us tending to show she had destroyed it. The legal presumption arose, from the destruction of the will, that she did so with intent to revoke it.

There are authorities in other jurisdictions, including New York and Pennsylvania, and to the effect that where a will is executed in duplicate, a revocation by the testator of one copy has the same effect as to all other existing copies wherever they may be. 68 C.J. p. 992, §§ 758 and 759. This question has never been before an appellate court of this state in so far as we have been able to ascertain. That question is only before us as an incident to the one of intention by testatrix to revoke, and we shall therefore go no farther than to discuss testatrix' acts as they relate to her intentions to revoke her will.

Even in New York the effect of destroying one of several wills, or copies, as may be said in broader terms, turns upon the intention of the party. In Re Pattison's Will, 78 Misc. 699, 140 N.Y.S. 478, it was said: "The presumption that the copy [of a will executed in triplicate] traced to the possession of testatrix, which could not be found after her death, was destroyed with intention to revoke, was overcome by her declaration, * * * a few days before the death of testatrix, that the wills were at Williams College * * * the copy produced by Williams College * * * will be admitted to probate."

In Managle v. Parker, 75 N.H. 139, 71 A. 637, 24 L.R.A.,N.S., 180, Ann.Cas.1912A, 269, the Supreme Court of New Hampshire held, quoting from the syllabus: "To revoke a will by destruction, there must be not only a physical destruction of the instrument, but also an intention to thereby revoke it." Again: "Where a will is executed in duplicate, the presumption of intent to revoke the same, arising from testator's act of destroying the copy in his custody, is not an irrebuttable conclusion, but is a mere inference of fact." It is further there held: "A will executed in duplicate is not revoked by the mere destruction of the copy in his possession, if testator understood that the other copy was left in force."

The provisions of article 8285 contain the only means by which a will, once executed, may be revoked. 44 Tex.Jur. p. 638, § 95. We recognize the well-settled rule of law in this state, that if a testator intentionally destroys the will, the legal presumption arises that he did so for the purpose of revoking its provisions. But this intention being only a legal presumption, is subject to rebuttal, and if rebuttal testimony is offered it becomes an issuable fact for the jury. The statement of testatrix that she had destroyed the will, standing alone, was not a sufficient revocation, for it did not meet the conditions of the above mentioned statute, which requires a revocation to be in writing, executed under like formalities, as

wills. A similar question to this was discussed and determined, as we have stated, in Compton v. Dannenbauer, 120 Tex. 14, 35 S.W.2d 682, 79 A.L.R. 1488.

To concede for the argument, that the statement by testatrix that she had destroyed the will was sufficient to establish it as a fact, then we may go no farther than to say that a presumption of law arises that it was done animo revocandi; we do not know what was taking place in her home about the time she declared she had destroyed it, but we do know from the testimony what she had said would happen if her brother learned she had made a will, that is, she would be worried and tormented about it; we know that she desired to carry out the agreement made with her deceased husband; that she knew when she made the statement that she had left with Mr. Queen a duplicate original of the will, with very definite instructions to probate it, regardless of what happened; that these instructions were never recalled, although she saw the attorney several times after the execution of the will and had a telephone in her house, and had an employee in her home calling regularly at the lawyer's office; it is further evident from the facts proven that she did not want anyone to know she had made a will, but that of necessity the attorney knew it, as did both the subscribing witnesses; it is significant, also, we think, that she sent one of these witnesses for the will and made the statement to the other; it is not an unfair deduction from these facts to assume that she wanted the only two persons who knew of the will, other than her attorney, to think none had been made, or at least that the one made had been destroyed. As held in the Compton Case, supra, her statement, that she had made a will would not have been sufficient to establish that as a fact, nor do we think a statement that she had destroyed one already made would establish the fact that she had revoked it. When a peremptory instruction is given and the judgment rendered thereon is challenged, we must consider all the facts and circumstances in evidence, in their most favorable light to the party against whom the judgment is entered; and if by doing so there was any testimony of probative force, to the contrary, it is our duty to reverse the case. 17 Tex.Jur. p. 910, § 410.

The testimony of the witness Queen, tendered by proponents, and excluded by the court, to the effect that both W. H. Reynolds and his wife, the testatrix, had previously told him that they had mutually agreed that neither of them would make a will during the lifetime of both, would have shed light on the subject of the intention of testatrix to revoke her will by the acts mentioned. The testimony disclosed by the bills of exception would not have shown the parties had entered into a contract which would have been void because violative of the law of descent and distribution.

The testimony would have shown that the agreement made between the parties was to the effect that they would not make wills, during the lifetime of both. This was conditioned that the survivor would make a will dividing the community property between the two sets of heirs of the parties. It is not unfair to assume that from the facts which would have been proven, that if the agreement had not been made they would have made wills; there would have been no occasion to make wills if they had desired that their respective community interests should descend as the law provided; if they had made wills, either or both could have deprived the survivor of any interest in the estate of the one who predeceased the other; by the agreement the survivor received a benefit which he or she might not have had, if the agreement had not been made; the agreement was carried out, and testatrix ratified it, both in her conversation with the witness and by the will.

If such an agreement was made between W. H. Reynolds and his wife, the consideration moving from one to the other was that neither would make a will changing the status of his or her property from what it would be under the agreement and the introduction of parol testimony to show this consideration, as was proposed, is not a violation of the rules of parol testimony, under article 3713, rule 24, Rev.Civ.St. 1925. The testimony offered and rejected by the court purported to be the declarations of the parties who made them, and there was no difference between the statements of the parties who made them. We do not consider the testimony would have violated the rule as to hearsay testimony.

By the terms of the will propounded, it is provided, among other things: "After due deliberation and in compliance with an understanding between me and my beloved husband, W. H. Reynolds, and feeling that under the circumstances that it is right to all concerned," etc. The instrument further shows certain requests with respect to

her debts and provides for the division of the property in equal parts between her heirs and those of her husband.

 In excepting to the ruling of the court when the testimony was excluded, proponents stated to the court: "The testimony is further offered on the issue of whether or not it was the intention of the testatrix to destroy or revoke the will when a copy of it was burned, and we offer the testimony on that question alone." We think it was pertinent to the issue and should have been admitted.

If, by the testimony, a jury should determine that such a contract and agreement was entered into by and between the parties, that it was carried out and fully performed, and thereafter ratified by testatrix, she could not revoke her will giving the agreement effect, and the law will not presume she intended to do a thing which she had no legal right to do.

The last statement above would not be true if the agreement was in contravention of the principles announced by our courts to the effect that agreements between husband and wife intended to change the law of descent and distribution, are void. Groesbeck v. Groesbeck, 78 Tex. 664, 14 S.W. 792; Gorman v. Gause, Tex.Com. App., 56 S.W.2d 855.

As stated above, we do not consider that the agreement between these parties not to make wills is equivalent to an agreement to change or nullify the laws concerning descent and distribution. The law permitting the disposition of one's property by will is of equal dignity with that of descent, and the only purpose of a will is to provide that property shall go otherwise than where it would go if no will is made.

The right of husband and wife to make joint mutual and reciprocal wills pursuant to a contract between them, by the terms of which their community property passes in a manner different to that provided by the law of descent and distribution, has long been recognized by our courts. They are not violative of a statute forbidding contracts between husband and wife, and once having been executed, the survivor may not revoke it after the death of the other spouse. Larrabee v. Porter, Tex.Civ.App., 166 S.W. 395, writ refused.

Article 3348, R.C.S., provides certain requisites necessary to be proven before a will is admitted to probate. The fifth condition is "that such will has not been revoked by the testator." The burden was on proponents in this case to make this proof. 44 Tex.Jur. p. 636, § 94.

When a trial is had to a jury, as in this case, the above provisions become fact issues, and when testimony entitled to probative effect is offered, it should be submitted to the jury for determination. We think that the undisputed facts shown by the testimony, more especially taken in connection with what would have been shown by the witness Queen, had it not been excluded by the court, were amply sufficient to entitle proponents to its submission to the jury upon a proper issue, as to whether or not testatrix intended to revoke her will.

It was reversible error for the court to exclude the testimony complained of and to give the peremptory instruction. The errors assigned complaining of these matters are sustained, and the case is reversed and remanded for another trial.