## COMBS v. HOWARD et al.

No. 13917.

Court of Civil Appeals of Texas. Fort Worth.

June 2, 1939.

Motion for Rehearing Withdrawn by Agreement Aug. 3, 1939.

Goree & Rice and William S. Harris, all of Fort Worth, for appellant.

R. B. Hood and Grindstaff, Zellers & Hutcheson, all of Weatherford, for appellees.

SPEER, Justice.

This is a will contest. We reversed a judgment entered in this case upon an instructed verdict by the District Court of Parker County, in favor of contestant, on a former appeal. See Howard v. Combs, Tex.Civ.App., 113 S.W.2d 221.

Nolan Queen filed an application in the County Court of Parker County, for the probate of the last will of Luvenia Reynolds, deceased. All necessary allegations were made, including one showing that the

proponent was named as independent executor in the will, and that he was in no way disqualified from accepting letters testamentary. The will was tendered along with the application.

The proposal was duly contested by A. B. Combs, a brother of testatrix. By his pleadings he showed himself to have such interest in the estate as would entitle him to contest the probate of the will. Grounds for contest shown were (a) that the instrument filed by proponent, purporting to be the last will of testatrix, was not what it purported to be, but was in fact only a carbon copy of a will; (b) that Mrs. Luvenia Reynolds had died on August 9th, 1936, intestate, having theretofore made a will, of which the instrument filed was a carbon copy, but that she had subsequently caused said will to be destroyed, with the intent to revoke it. Further allegations were made by contestant to the effect that W. H. Reynolds, the former husband of testatrix, had predeceased her, and that they were possessed of a community estate at the time of and prior to his death; that they had no children, and that at the death of W. H. Reynolds, Luvenia Reynolds became seized and possessed of the entire community estate. That the contestant, being a brother of testatrix, was therefore an interested party.

The will was duly admitted to probate in the county court of Parker County, on September 10th, 1936. Contestant excepted to the judgment and perfected an appeal to the District Court. A transcript of the proceedings had in the County Court was duly certified to the District Court, and filed on September 26th, 1936.

After the appeal and before the case was tried in the District Court, Janet Reynolds Howard and other heirs of W. H. Reynolds, obtained leave of court and intervened as parties proponents of the will, with Nolan Queen. These interveners adopted the application theretofore filed by Mr. Queen, and further plead: That W. H. and Luvenia Reynolds were husband and wife, having lived together as such for more than fifty years, and accumulated community property; that they had no children; that during the life time of both, they entered into a binding contract between themselves to the effect that neither would make a will while they both lived, so that the survivor would receive the full benefit of all the community estate during his or her lifetime, but that in consideration of the benefits to be received under that agreement, the survivor would make a will, passing said property, after his or her death, in equal parts, one-half to the heirs of the husband, and one-half to the heirs of the wife. That both parties fully performed said contract; that W. H. Reynolds predeceased his wife and left no will. That Luvenia Reynolds survived her husband, and accepted the property under the terms of said contract and agreement; that she fully performed the terms of said contract, and, after the death of her husband, made and executed the will, then proposed to be probated; that said will provided that it was made pursuant to and in keeping with said contract. That said will was executed in duplicate originals, both of which were left with Mr. Queen, with instructions to see that it was carried out, regardless of what happened. That it was never revoked and that because of the executed contract between her and her husband, the testatrix was estopped to revoke it.

Prior to the trial in the District Court, Nolan Queen, the original proponent, filed a motion, which, omitting the formal parts, reads:

"Now comes Nolan Queen in person, and moves the Court that he be permitted to withdraw as a party to this suit and as the proponent of said will herein offered for probate.

"I hereby decline to act as executor under said will and decline to prosecute this suit or action and hereby disclaim any and all interest in and to the property involved herein and all rights under said will, and hereby allege that I have no interest in the subject matter of this suit."

The court heard the above motion and entered judgment sustaining it. The order recites the hearing and appearance of movant, the interveners and contestant. Relating to contestant, the order reads: "And the contestant agreeing thereto in open court." The order decrees that Nolan Queen be dismissed as a party to the suit by virtue of his motion and the recitations in the will; and it was found and decreed that by virtue of his disclaimer of all property rights or interests in the subject matter, and his declination to serve as executor, that all rights and interests therein be divested out of him, and that the interveners be allowed and ordered to

prosecute the case to conclusion under the cause style of Janet Reynolds Howard et al., proponents, v. A. B. Combs, contestant, No. 9350.

Additional pleadings by way of amendments were filed by all parties, subsequent to the above order, but they are substantially, insofar as this appeal is concerned, the same as above indicated.

In accordance with the reversal by this court on the former appeal, the case was again tried to a jury on special issues, April 13th, 1938. The verdict was favorable to proponents and judgment was entered admitting the will to probate, which judgment was certified to the probate court of Parker County, Texas, for observance. Application for new trial was overruled and contestant has appealed.

This appeal is predicated upon what may well be classed as two general propositions, they being: (1) Since the evidence shows that the instrument sought to be probated was a carbon copy of the original will, and that the original was caused by testatrix to be burned, she thereby revoked the will, and the copy could not be probated; (2) that the court erred in admitting in evidence the testimony of Nolan Queen, the person shown to have been named as the independent executor of the will concerning transactions had between him and testatrix, as well also those between him and W. H. Reynolds, the deceased husband. It is contended that but for these alleged errors, an instructed verdict should have been given.

 At the time the proposed instrument was written, it is evident that another one identically like it was made on a typewriter. One was made from the impression of the letters on the machine against an inked ribbon, while the other was the result of the types being impressed upon a sheet of carbon paper. The latter was offered for probate in this case. Both were executed by testatrix simultaneously; that is, they were executed upon the same occasion. It does not appear which in fact was signed first in point of time. We believe and so hold that the instrument proposed was for all purposes an original will, even though made by means of a carbon paper, and does not fall within the rules requisite to process and making proof of wills not produced with the application for probate. So far as we know, the one offered in evidence was executed last. The nec-

essary proof and authenticity of the instrument as to its being the last will of testatrix, was made; the evidence of the subscribing witness states: "And she (testatrix) declared the said will so made to be her last will and testament." We can see no reason why it would become important as to which of the two instruments was executed first. The one offered was in regular form and upon its face appears regular. If she had made another will subsequently and thereafter destroyed it, the destruction by her would not necessarily mean that she desired to revoke the one proposed; but only that she revoked the one destroyed.

 It is not contended by contestant that the destruction by testatrix of a subsequently made will would have the effect to revoke a previous one, but it is contended that since both instruments were identical and made simultaneously, the destruction by testatrix of one revoked both. In connection with the history of the transaction, as to when and why the will was written, as testified to by Mr. Queen, it was disclosed that testatrix was especially anxious that her relatives should not know that she had made a will, and that Mr. Queen, as was his custom, made them in duplicate originals, and from this testimony it may be said that the two instruments were identical. The evidence indicates that the attorney, testatrix, and the two subscribing witnesses were the only persons who knew at the time that a will had been made. It is also true that testatrix sent one of the subscribing witnesses to the lawyer's office and obtained one of the instruments and later caused the witness, Mary Burns, to destroy it; that testatrix subsequently told the other subscribing witness, and the wife of her brother, the contestant here, that she had destroyed it. If the destroyed instrument had been the only will she had in existence, its destruction by her would raise the legal presumption that she, by that act, desired to revoke it.

 That presumption, however, is subject to rebuttal by facts. There are authorities in other jurisdictions which hold that where a will is executed in duplicate, the destruction by testatrix of one copy with the intent to revoke it has the same effect upon the other copy. 68 C.J. p. 902, sects. 758 and 759. There is some doubt in our minds of the soundness of that holding, if applied to all cases. Every person must know that they can have but one

210

"last will". If, as in this case, one should have two identical instruments, each termed their last will, one or the other must be ineffectual. If, as a matter of precaution, to avoid confusion resulting from having two last wills, testatrix ·destroys one of them, with a view to adding strength to the validity of the other, it cannot be said that the destruction of the one for that purpose raised a presumption that she intended to revoke the other.

The authorities from other jurisdictions, however, hold no more than that the destruction of one copy with intent to revoke her will, raises the same presumption as to all copies of the one destroyed. In re Pattison's Will, 78 Misc. 699, 140 N.Y.S. 478, it was said: "The presumption that the copy [of a will executed in triplicate] traced to the possession of testatrix, which could not be found after her death, was destroyed with intention to revoke, was overcome by her declaration * * * a few days before the death of testatrix, that the wills were at Williams College * * * the copy produced ·by Williams College * * * will be admitted to probate."

In discussing the effect of intentionally destroying a copy of a will by testator, it was held in Managle v. Parker, 75 N.H. 139, 71 A. 637, 24 L.R.A.,N.S., 180, Ann. Cas.1912A, 269, by the Supreme Court, that to revoke a will by destruction, there must not only be a physical destruction of the instrument, but also an intention to thereby revoke it. It was further held in that case, as shown by the syllabus, as reported: "Where a will is executed in duplicate, the presumption of intent to revoke the same, arising from testator's act of destroying the copy in his custody, is not an irrebuttable conclusion, but is a mere inference of fact." This rule is also announced in that case: "A will executed in duplicate is not revoked by the mere destruction of the copy in his possession, if testator understood that the other copy was left in force."

■ Our statutes provide the only means by which a will may be revoked, after having been once legally executed; one of which means is the destruction by testator of the instrument, or causing it to be destroyed. Article 8285, R.C.S. When it is once established that the testator destroyed or caused his will to be destroyed, the legal presumption arises that he did so

for the purpose of revoking it. This presumption is not such as cannot be rebutted by competent evidence, but the burden of proof is upon one seeking to establish that such intention did not exist. 44 Tex.Jur. p. 640, sect. 97. When the issue is thus made, and a jury has been demanded, it becomes necessary to submit the question to the jury for determination. The special issues and their answers on this point were, Issue No. 5, Testatrix directed Mary Burns (one of the subscribing witnesses) to burn the will. No. 6, Mary Burns, in the presence of testatrix, did burn the will. No. 7, By the burning, testatrix did not intend to revoke her will. In response to· Issue No. 1, requested by contestant, it was found that testatrix did not intend to revoke her said will by having it burned and destroyed in her presence.

■ We think there was sufficient evidence of probative force, outside of that complained of by contestant, to support the verdict.

As above stated, the will was executed by testatrix in duplicate, each made by the same impression on the typewriter. Testatrix is bound to have known this. The will is somewhat lengthy, but it contains this provision: "After due deliberation and in compliance with an understanding between me and my beloved husband, W. H. Reynolds, and feeling that under the circumstances that it is right to all concerned, since Mr. Reynolds and I had no children, it is my will and desire that after the payment of the above and foregoing expenses, debts and legacies, that all of the property, real, personal and mixed, of which I may die seized and possessed, shall be divided into two portions, one-half of my property going to my heirs as hereinafter provided, and the other one-half of my property going to the heirs of my deceased husband, W. H. Reynolds, as hereinafter provided, as follows, to-wit:" Then follows the names of the heirs of each.

■ Clearly, by the terms mentioned, there had been some kind of agreement or contract between testatrix and her deceased husband, by which she felt obligated to pass the property as she did. The evidence reveals that all property accumulated between testatrix and her husband was community, and that they had no children. It is obvious that since no will was made by the husband in his lifetime, that

she took apparent title to all the community property in virtue of the statutes of descent and distribution. But it is indisputably true, as evidenced by the wording of the will, that there had been some transaction between testatrix ,and her deceased husband, by which she felt impelled to make the disposition of the property that she did under the will. Strictly speaking, in a proceeding to probate a will, as in this case, the court is not concerned about the disposition made of property by a testator, nor whether he may pass title to the property bequeathed, nor can that court construe the terms of the will. The paramount issue in such cases is, was the proposed instrument executed under the solemnities provided by statute? (Vernon's Ann. Civ.St. art. 8281 et seq.) Is it the last will of the testator? The last inquiry embraces the question of whether or not it has been revoked. See Ellsworth v. Aldrich, Tex. Civ.App., 295 S.W. 206, writ refused. The motive that prompted the execution of the will, as disclosed by its terms, or from extrinsic evidence properly admissible, in our judgment, may be looked to in determining whether or not the testatrix in this case intended by her subsequent acts to revoke it. We find it unnecessary to go further than to say such evidence may be considered by the jury in arriving at a verdict as to whether she intended to revoke the will tendered for probate.

The foregoing matters were discussed by us in our former opinion and additional reasons were there mentioned for the announcement of our conclusions here; but in view of a possible review of this case by our Supreme Court, we have again mentioned them, for convenience, and also refer to our former opinion and authorities there cited. We overrule the assignment in which it is contended that the will was revoked as a matter of fact and law.

The second ground urged by contestant for a reversal of this case, is on account of the admission in evidence of the testimony of Nolan Queen. Mr. Queen was named in the will as executor, and the objections made to his testimony were based upon the rule forbidding certain persons to testify concerning dealings and conversations had with a deceased person, as provided by Article 3716, R.C.S.

Mr. Queen testified that he had known both Mr. and Mrs. Reynolds many years, and had represented them at all times in their business affairs; that Mr. Reynolds had told him often during the time witness had known him, that he and his wife had accumulated certain community property; that they had no children; that he did not like her people and she did not like his; that each of them wanted the survivor to have the full benefit of all the community property as long as he or she lived; that knowing the survivor would inherit all community property at the death. of the other, they had agreed that neither would make a will during the lifetime of both, but that the survivor would make a will passing the property in equal parts, one part to his heirs and the other part to her heirs. That W. H. Reynolds died intestate, and that Mrs. Reynolds took charge of all the property and that the witness had, for several years, handled it for her under a power of attorney. That Mrs. Reynolds (testatrix) had, since the death of her husband, likewise told witness of the agreement between her and her husband, and expressed a desire to carry it out by her will; that, at her request, witness drafted the will in controversy, in duplicate, having both executed. That testatrix told him to let no one know she had made a will; that if her people knew it they would worry her to death; that he enclosed the two instruments in separate envelopes, sealed them up, and put them in his private safe. That testatrix told him of her contemplated trouble with her heirs and warned him to see that the will was probated and carried out, regardless of anything that might happen. That two or three months after he had prepared the will and placed the copies in the safe, Mary Burns, whom he knew lived at the home of testatrix, and whom he knew had witnessed the will, came to his office and said testatrix wanted her copy of the will. He sent one of the sealed envelopes to her. That testatrix had a telephone in her house and he had one in his office; that she never did cancel or retract her instructions to him. He said that shortly before her death (shown to have been after she had caused the will to be burned) he was called to her home on another matter of business and when he was leaving she followed him to the door and reminded him that she was looking to him to see that her will was carried out regardless of what happened.

The foregoing is the substance of the testimony which forms the basis for an assignment of error by contestant.

We have shown in the early part of this discussion that while the suit was pending in the District Court, Mr. Queen procured an order of that court dismissing him from the suit as a party proponent, divesting out of him all right, title and claim to all interest in the subject matter upon his disclaimer and refusal to act as executor, and that contestant agreed in open court for the decree to be entered.

The contestant relies upon the provisions of Article 3716, R.C.S. Insofar as it is applicable here, that article reads: "In actions by or against executors * * * in which judgment may be rendered for or against them as such, neither party shall be allowed to testify against the others as to any transaction with, or statement by, the testator * * * unless called to testify thereto by the opposite party; and the provisions of this article shall extend to and include all actions by or against the heirs or legal representatives of a decedent arising out of any transaction with such decedent."

Under the common law an interested party could not testify in his own behalf. This handicap to persons involved in litigation was removed in 1871, when the Legislature passed what is now Article 3714, R.C.S. It seems that the provisions found in Article 3716, above quoted, constitute the exception to the general rule announced in Article 3714, supra. This exception includes, only parties to actions by or against executors, in which judgment may be rendered for or against them as such. This exception is purely statutory and will be strictly construed so as to confine the application of the rule to only those included by its terms, and to avoid encroachment upon the general rule that "No person shall be incompetent to testify on account of color, nor because he is a party to a suit or proceeding or interested in the issue tried." Article 3714, R.C.S.

In Davidson v. Gray, Tex.Civ.App., 97 S.W.2d 488, the Eastland Court of Civil Appeals discussed a similar question to that before us. In that case a testator had made a will just a few days before his death, in which he bequeathed to an attending physician $1,000. The probate of the will was contested and the beneficiary physician, Dr. Kessler, testified at the trial. The admission of his testimony was contested because he was an interested party under Article 3716. The court said, 97 S.

W.2d at page 490: "If Dr. Kessler is to be properly regarded as a party to the probate action, a question we find it unnecessary to determine, it is our opinion that his formal disclaimer of any interest under the will and declaration that he would not receive the bequest to him, had the effect of eliminating him as a party to the action and removing any disqualification which otherwise he might have had. Markham v. Carothers, 47 Tex. 21; Mayfield v. Robinson, 22 Tex.Civ.App. 385, 55 S.W. 399; Richards v. Hartley (Tex.Civ.App.) 194 S.W. 478; Oury v. Saunders, 77 Tex. 278, 13 S. W. 1030; Posey v. Varnell (Tex.Civ.App.) 60 S.W.(2d) 1057; Albritton v. Commerce Farm Credit Co. (Tex.Civ.App.)' 9 S.W. (2d) 193, and authorities therein cited."

In Albritton v. Commerce Farm Credit Co., supra, discussing the admissibility of testimony given by persons who were formerly interested in a suit, this was said [9 S.W.2d 196]: "When a party to such a suit [within the provisions of Art. 3716] has disclaimed any interest in the property involved therein, * * * such party thereupon becomes only a nominal party to such suit, and competent to testify concerning transactions with and statements by the deceased affecting the issues involved therein."

In Posey v. Varnell, supra, the admissibility of evidence by persons claimed to be interested as parties in an action involving the estate of a decedent, was discussed. Relating to the inhibition found in Art. 3716, it was there said [60 S.W.2d 1058]: "Though G. W. Kendrick was the husband of one of the heirs, his testimony was not received in violation of this article. He and his wife had disclaimed all interest in the estate, and there was nothing in evidence making them liable in any way as heirs of the deceased, and under their disclaimer they had no right, title, claim, or interest to any part of the estate in controversy. Therefore, his evidence was properly received."

In the instant case, if the witness Queen had not previously disclaimed interest in the estate and refused to go further with the probate of the will, and specifically declined to act or qualify as executor as provided in the will, the provisions of the statute would have precluded him testifying in the case as to transactions with and conversations had with the testatrix. But, as we have seen, he not only made the disclaimer and declined to be appointed exec-

utor, but he procured a judgment of the court to that effect. This very effectively eliminated him from ever thereafter asserting any right, title or claim to the estate as executor or otherwise. No judgment could thereafter be rendered in the case for or against him as executor. He is shown to have had no other possible interest in the subject matter. Under the authorities cited, we have concluded and so hold that the court did not commit error in admitting his testimony.

Contestant cites and relies upon case of McKibban v. Scott, 131 Tex. 182, 114 S.W. 2d 213, 115 A.L.R. 1421. We have carefully studied that case and do not believe it applicable to the point before us. There, the phase of the case referable to the point before us, is simply this: The court held that a person named as executor in a will could not testify upon a trial for its probate, concerning transactions had with the testator, even though such person had not at the time he offered to testify been appointed by the court as such executor. In other words, it was held that the named executor in the will was as effectively precluded from testifying under Article 3716, before the order probating the will was entered as afterward. This is because a judgment in that kind of a case can, and doubtless will be, rendered, for or against him as such executor as provided by the statute. If the will is admitted to probate, he will be named executor, if denied probate judgment will be rendered to that effect, which will reject him as an executor. In the instant case, no judgment could have been properly rendered in this case which would affect Nolan Queen one way or the other. He had disclaimed any interest in the estate and declined to be appointed executor, and the court had dismissed him from the suit and recognized his declination to prosecute the suit and be appointed executor by a decree to that effect. We think there was no error shown, under the circumstances of this case, in the admission of the testimony of the witness Queen, and the assignments raising the point are overruled.

Other assignments of error are urged in the briefs of proponent, such as: The court erred in submitting special issues two, three and four, wherein it was found that W. H. and Luvenia Reynolds entered into a verbal contract, by which neither would make a will during the life-time of both, and that the survivor would in turn make a will bequeathing the property as did testatrix; that, that agreement remained in force until the death of W. H. Reynolds, and that W. H. Reynolds relied upon his wife carrying out the agreement. These matters were not ultimate issues, determinative of whether the proposed will was executed under the solemnities of law, nor that the instrument sought to be probated was the last will of testatrix. But, as we have shown, they were matters plead by proponents and evidence supporting them was admissible as bearing upon the circumstances of intentional revocation of the will by testatrix. Submission of these points to the jury and the answers thereto, while unnecessary to a determination of the real issues, did not constitute such an error as would require a reversal of the case, when the ultimate issues were submitted and answered favorable to proponents, with supporting evidence.

It also follows from what we have said that no error is shown in the refusal of the court to sustain exceptions urged to the pleadings of proponents relating to the previous agreement between the testatrix and her husband. The evidence introduced thereunder was admissible for purposes shown. Nor should the evidence of former statements by testatrix have been excluded upon the theory that it violated the hearsay rule.

In its final analysis, we conclude that the record before us supports the judgment admitting the proposed will to probate, as against the contention that the propounded instrument was a carbon copy of another instrument, not produced in court but shown to have been destroyed at the request of testatrix. We also conclude and so find that the destruction by testatrix of one of the copies of the propounded will raised the legal presumption that she intended to revoke that instrument, but that that presumption was rebuttable and became a fact issue under the testimony adduced. The evidence of the witness Queen was admissible since he was not interested in the result of the case, either as beneficiary, executor of the will, or otherwise. The evidence as a whole abundantly supported the verdict of the jury, upon which the judgment was entered.

We see no error in the record requiring a reversal of the judgment of the trial court, and it is therefore affirmed.