Gordie J. SPARKMAN, Appellant,

v.

ESTATE of Eva Mae MASSEY, Deceased,
Appellee.

No. 15199.

Court of Civil Appeals of Texas.

Dallas.

Dec. 7, 1956.

Rehearing Denied Jan. 4, 1957.

Templeton & Gauen, and John E. V. Jasper, Dallas, for appellant.

Ralph W. Currie and Henry Tirey, Dallas, for appellee.

YOUNG, Justice.

R. C. Taylor offered for probate a writing alleged to be the last will of Eva Mae Massey, dated January 27, 1950, executed with all formalities required by law,

except that same was a carbon copy of the original will and is contested [1] on such ground. Upon hearing in County Court, the contest was overruled and the instrument in question admitted to probate. On appeal to the District Court and similar ruling after trial, contestant excepted and has duly brought such adverse judgment to this Court for review.

On above date the will of decedent was prepared by Attorney J. C. Muse, Jr., at her instance; signed by Mrs. Massey and witnessed by the Attorney and his secretary, Miss Marder. Both the original draft of the will and a carbon copy thereof were signed by testatrix and attesting witnesses in keeping with statutory requirements. As already stated, it was this carbon or duplicate copy of the original will that was offered for probate.

Mr. Muse delivered the original will thus signed and witnessed to Mrs. Massey and she left his office with it; he retaining the carbon copy in his file under circumstances later to be related in the testimony. Testatrix died August 27, 1955 and after diligent search the will (original copy) was never found among her effects. The following points of appeal are presented in such connection: The trial court's error: (1) "in admitting to probate a carbon copy of the will executed by Eva Mae Massey on January 27, 1950, since the original will was not found and was last see*m* or known of in the hands of Eva Mae Massey. Since the will was not found a legal presumption was raised that the same was destroyed by testatrix with the intention of revoking same and such presumption was not overcome by proof of proponent to the contrary"; (2) "in permitting the proponent of the will to testify as to transactions with the testatrix as such testimony is specifically barred by Article 3716, Revised Civil Statutes of Texas, as he was a party

to the suit, being the proponent of the will and was also the husband of an heir."

Turning to the record, excerpts from the testimony of Mr. J. C. Muse, as elicited on direct and cross-examination, relative to these duplicate wills (original and carbon) should first be stated:

"Q. * * * I observe on the instrument which has been identified as Proponent's Exhibit No. 1 that it is referred to on the back of it as 'Duplicate Will'. I'll ask you whether or not you had another copy of this same instrument executed on the same occasion sir? A. That is true.

"Q. And what happened to the other copy? A. The other copy was delivered to her and she delivered this copy to me to keep.

"Q. All right. Now did you have any conversation with her on the occasion in question as to the desirability or non-desirability of executing a will in duplicate originals such as this? A. I explained to her that for many years we had followed a practice of preparing duplicate wills and that we preserved one copy in our office, if we were requested to do it, and that we had a file there, and I explained to her that it was easy for the will to be tampered with or destroyed and that that was another one that she could come back and get that would not be tampered with that was left in the file for that purpose. And then she said that she would like to leave a copy there. And when that was done Miss Marder put this instrument in an envelope, marked it and sealed it in the presence of Mrs. Massey. And it was then delivered to her. And she put it in that file we had.

"Q. Now with respect to the other copy, have you ever seen that again?

1. Contestant was the husband of deceased by a marriage ceremony of July 13, 1955. After 18 days the parties had separated, she filing suit for divorce on grounds of cruelty, which action was pending at time of her death.

A. I have never seen it since she took it away with her. * * *

"(On cross-examination) Q. Mr. Muse, I will ask you again to look at the will and tell us whether or not that isn't a carbon copy of an original paper or instrument that was drawn for Mrs. Massey? A. That is true.

"Q. And you gave the original to Mrs. Massey, isn't that true? A. It is apparent that we did.

"Q. Well, there were only two drawn, weren't there sir? A. No.

"Q. Well, where are the others? A. I have—I keep a copy of every will that is written in my office for my own files, and there's a yellow copy that I have.

"Q. Where is that? A. It is up in my office. It wasn't executed. There were only two copies executed.

"Q. And you gave * * * the executed copy which was on the original paper to Mrs. Massey, isn't that true sir? A. That is true.

"Q. And she left with it as her will, isn't that true? A. She did what?

"Q. She left with that as her will, the original? A. That isn't what I think about it.

"Q. Well, that was true. You said this is your will, and she took it, did she not, Mr. Muse? A. No sir. She left with me the duplicate copy of her will, which I had informed her was also a will and that if something happened to the other one that she could use this one. That is what I told her.

"Q. And she took the other one with her? A. That's the one we gave her, that's right.

"Q. Well, she took it with her. You saw her leave with it? A. Oh, yes.

"Q. Now, did she ever come back and see you any more about either of the will or this duplicate? A. Never about her will, no.

"Q. You never had any further discussion with her in your professional capacity, as her attorney, about the will? A. No. That was a closed matter. She didn't discuss with me making any changes in the will but she did discuss other matters that related to her estate."

At time of above testamentary transactions (January 1950) Mrs. Massey was a widow, her husband, Richard Preston Massey, a retired merchant, having died in 1948. All of her property of more than $10,000 in value was left by these instruments to a nephew, Robert Preston Taylor, then twelve years of age, to be his in fee simple if over 21 years at time of her death, or in trust until that time should he be a minor on her decease. She was childless and had held this beneficiary in affectionate regard since his birth. Undisputed testimony was adduced concerning the close affection of testatrix for this particular nephew in statements made by her to others before and after making of the dated will; some only a few weeks before her death. Such testimony will be detailed briefly.

Mrs. O. D. Grimes testified to a conversation had with Mrs. Massey in May 1955, deceased expressing her deep fondness for Robert Preston; that her will had been drawn leaving everything to him; and with respect to where the will was, that "her lawyer had it." Mrs. Tommy Morris, niece of deceased, similarly related statements made by Mrs. Massey to her before and after 1950; of decedent always speaking affectionately of "Bob" and that all her property would go to him. T. M. Walker, a real estate man and an old acquaintance of Mrs. Massey, told of a conversation with deceased between the 10th and 20th of July, 1955, to effect that

he had received a cash offer of $12,500 for property belonging to her, and that if sold, she should take good care of the money; Mrs. Massey answering that she had a will making over everything to her nephew for purpose of his education. And lastly, a letter of date August 17, 1955 (she died August 27), identified as in handwriting of deceased and addressed to her sister, Mrs. Taylor, mother of Robert Preston. Such letter referred to her late unfortunate marriage to contestant Sparkman, their separation, and her expected judgment of divorce after thirty days upon suit therefor. Testatrix also referred in the letter to "Bob" with expressions of affection, suggesting that he spend a week with her.

The original of these testamentary instruments having been last seen in custody of the testatrix and not found at her death after due search, the case was tried as one involving a lost will; requiring appellee to assume the burden of proving that the will had not been destroyed by deceased with intent to revoke it. Art. 8285, Vernon's Ann.Civ.St., sec. 63, Texas Probate Code, V.A.T.S., provides: "No will in writing, and no clause thereof or devise therein, shall be revoked, except by a subsequent will, codicil, or declaration in writing, executed with like formalities, *or by the testator destroying or canceling the same, or causing it to be done in his presence."* (Emphasis supplied.)

■ Above italicized proviso of the statute has uniformly been given the following construction by Texas Courts: Where the will of a testator was last seen in his possession and could not thereafter be found, the presumption arises that he has destroyed it animo revocandi, and the burden is on proponent by competent evidence to prove the contrary. In other words, "The inference or presumption which is generated by the facts in question may be overcome or rebutted; it is not conclusive." 44 T.J. 920; Aschenbeck v. Aschenbeck, Tex.Civ.App., 62 S.W.2d 326;

Shepherd v. Stearns, Tex.Civ.App., 45 S.W. 2d 246; Howard v. Combs, Tex.Civ.App., 113 S.W.2d 221; Combs v. Howard, Tex. Civ.App., 131 S.W.2d 206; and if rebuttal testimony be offered, revocation or not of the instrument becomes an issuable fact for a court or jury. Howard v. Combs, supra. As evidence showing the state of decedent's affections subsequent to execution of the will, proof may be made of his declarations or statements; in particular to show that the close relationship between decedent and the named beneficiary had continued without interruption until the former's death. 44 T.J. 922.

■ Consistent with above principles, an issue concerning a revocation of the missing will of Mrs. Massey has been raised by the testimony, resolved by the trial court in favor of proponent; the testatrix having recognized its continued existence, and her affection for the chief beneficiary thereunder remaining steadfast to the end. Furthermore, there is not a circumstance in evidence tending to show dissatisfaction on part of testatrix with her oft-mentioned will or of any desire to cancel or change the 1950 testamentary instrument after its execution.

■ Appellant points out that appellee has not here sought the establishment of a lost will, but instead makes application to probate "a carbon copy of the will of Eva Mae Massey as if it were the will itself"; arguing that "since proponent failed to show the copy succeeded to the place originally held by the original instrument, it is plain that the proponents have failed to establish grounds for the probate of such carbon copy as the will." But as already stated, the trial court without objection has required a trial of the cause on theory of a lost will. See Rule 67, Texas Rules of Civil Procedure.

■ R. C. Taylor, proponent, was called as a witness to make formal identification of the letter of deceased to her sister, of date August 17, 1955, over objection of

appellant that such constituted a transaction with the decedent within purview of Art. 3716, V.A.C.S. However, the decisions are to the contrary. See Martin v. McAdams, 87 Tex. 225, 27 S.W. 255; Williams v. Farmers' Nat. Bank, Tex.Civ.App., 201 S.W. 1083.

All points of appeal are overruled and judgment of the trial court affirmed.