In the Matter of the Estate of BRIDGET FLYNN, Deceased.

Surrogate's Court, Monroe County, July 23, 1940.

Baker & Carver [*Barton Baker* of counsel], for the petitioner.

*James V. Jones* [*Hugh J. O'Brien* of counsel], for the contestants.

FEELY, S.    The last will of this testatrix was duly executed by her in triplicate original, and each was attested by her lawyer, by the latter's secretary, and by a neighbor.    One of the triplicates is on file with the petition for probate, and the second is in the possession of the petitioner, but the third cannot be found.    Its absence presents a threshold question in this motion and in the probate.

After the contestants had included in the usual objections to probate the specific objection that the will had been revoked, the proponent brought the present proceeding for manifold interlocutory relief, such as admissions of fact, particularization of objections, etc., and included therein a demand that the will be probated. On the return day, contestants moved to dismiss this proceeding on the papers, on the ground that it did not state a case for probate in reference to the missing triplicate.

The petition herein is verified by the draftsman of the will, who is the nominated executor, and one of the three attesting witnesses, and is also the counsel for petitioner.    The affidavit of his secretary, the second attesting witness, is attached; and reference is made to the affidavit of the three attesting witnesses, which was filed with a prior petition.    Several supplemental and new affidavits were filed July 9 and 19, 1940.

Taking these affidavits and allegations at their face value for the purpose of this motion, they can be summarized as stating that about three months after testatrix had made her will as aforesaid and about six months before her death, she returned to her lawyer's office where he then had in safekeeping two of the triplicates; and she then said to him and to his secretary that she wanted another one of the wills because the one she had taken with her at the time of the execution had been stolen, and she could not find other papers; and having signed a receipt for the second triplicate, she took it away with her saying she was going to take this will to the bank or to the neighbor, who had attested it, as papers were not safe in her home.    She was an aged woman, who lived alone.

The neighbor's affidavit states that testatrix, about three months after the date of the will, came to her home and gave this affiant one of the triplicates, which testatrix then said she had received from her lawyer upon telling him that the triplicate which she had taken home at the time the will was made had been lost or stolen, and that she had missed other papers from time to time; and that she had looked all over for the other triplicate, but could not find it anywhere; that she had not destroyed it, as the only will she had destroyed was the one that preceded the triplicate will; and that her lawyer now had the only other triplicate. On each of these occasions testatrix called this witness' attention to the original signatures on the will, and said her property was to be divided according to it.

The papers also state the belief of testatrix that relatives had stolen or destroyed the triplicate she first received. If they had opportunity so to do, one could not infer from this alone that they had done so; but the facts that are set out fall far short of warranting any inference even of opportunity; and the papers are barren of any facts from which theft or destruction can be inferred. The papers do show satisfactorily that the old lady had lost the triplicate she first had and could not find it, and it has not since been found; and that she had not revoked it. The papers also set out that her motive at the outset in making her will in triplicate original was a fear that her will might be stolen or destroyed by some of her relatives; and that she was advised such a method of execution would be a safeguard.

On principle it seems now the court correctly held in *Matter of Pattison* (78 Misc. 699; affd., 170 App. Div. 926) that the rule as to the production of duplicate wills on probate applies also to wills executed in triplicate original, to the extent that all of the three originals must then be produced and found to be alike and unrevoked in any way before probate can be decreed, unless the missing triplicate or triplicates be satisfactorily shown to have been lost, or to have been destroyed by accident, or by fraudulent design in the lifetime of testatrix, so as to overcome the presumption, arising from non-production, that testatrix had destroyed the missing one or ones for the purpose of revoking her will, because revocation of one of such duplicates or triplicates would revoke both or all of them.

Contestants' preliminary point now is that in this respect of non-production the moving papers set out nothing more than declarations of testatrix which were not part of any *res gestæ* but merely narrative of past events, to the effect that she had lost and could not find the missing triplicate and that she had not destroyed it, but believed it had been stolen or destroyed by some of her relatives.

The overweight of authority seems to support the rule that post-testamentary declarations of testator which are merely narrative of a past event are not admissible in evidence to rebut the presumption of revocation arising from the non-production of the will, or of all of the originals thereof. There is also authority for a ruling that no post-testamentary declarations of a testator are admissible to prove either revocation, or non-revocation, " unless they are part of the *res gestæ* or act done."

The *res gestæ*, or act done by testator, in the one case would be in some statutory form of revocation, or in the other case some act of preserving or safeguarding the will, other than a factually unsupported declaration, *e. g.*, " my will is in my desk," without some proof other than this bare declaration, to the effect that the will actually was there then, as by testimony of others than testator that the will was seen by them there then; or by the testimony of others showing there was a factual setting, part of which was the declaration of non-revocation, such as a statement: " I have not destroyed my will; I have lost it and can't find it; here is a triplicate original of it which I wish you would safekeep for me," accompanied with an actual delivery of such original to the person so addressed.

The contestants' point does not seem to quite reach this critical feature of this case, which is that the thing done, the *res gestæ* here, was a legal republication by testatrix of the second original to all of the original attesting witnesses, at the time the testatrix recovered it from two of the attesting witnesses, and at the time she actually delivered it to the third one of them, for the express purpose of safeguarding the will until it would be probated, notwithstanding the loss of one of the three originals. The declarations of testatrix at that time were part of her act and necessary in order to understand both her intention in doing it, and the nature of it. Safeguarding a will, when so carried on by testator, is a testamentary act, and when so done with the co-operation of all the original attesting witnesses may be an implied republication of the will.

Oral republication of a last will complies with our statutes if it be made to each of the original attesting witnesses, even though separately and alone, in the absence of each other, but with the original will present and seen by each of them, although without a resigning of it by either of them. (*Matter of Stickney,* 31 App. Div. 382; affd., 161 N. Y. 42. See, also, *Matter of Simpson,* 56 How. Pr. 125, 133.)

No particular form is requisite to convey the intention to republish a will, but it will suffice that whatever communication takes place between testator and each of the original witnesses is such

as to effect a common understanding and a clear meeting of the minds of both of them that the paper was to stand as testator's last will. Here the testator's post-testamentary declarations of non-revocation were not factually unsupported ones, but were integral parts of the overt, testamentary acts of obtaining one triplicate of her will from two of the original attesting witnesses thereto, and the delivery of it to the third of the attesting witnesses, stating to each of them her intention in so doing was to safeguard her will so it could be probated, notwithstanding the loss of the third triplicate.

This course of conduct constitutes a republication of the will, although testatrix may have been ignorant of the rule of law that the unexplained absence of one of the triplicates might be a bar to probating either or both of them.

Counsel for contestants argues that the averments are insufficient to establish a republication, because there was no acknowledgment, nor any request to attest; also that if testatrix intended to confirm her will in duplicate, she should have republished both of the extant copies; and also that the copy claimed to have been republished is not the one filed for probate.

It must be borne in mind that testatrix had not revoked any of these triplicate originals (See *Biggs* v. *Angus*, 3 Dem. 93); but was only endeavoring to protect and effectuate the testamentary plan expressed in them, notwithstanding the loss of the third original. A will that has been lost or stolen is not one that is "revoked;" although in the case of multiple execution, the failure to produce all the originals might be a bar to probate if the fact of loss or theft could not then be affirmatively proved. It is hard to imagine any better proof of loss than the declarations of the testatrix in the act of seeking to protect the surviving copies by making a new safe deposit of one of them, to the effect that she had not destroyed the missing one; but had lost it, and wished by the delivery of the second copy to safeguard the remaining copies of her last will. In her mind, her conduct was the confirmation of an existing will, rather than the revival of a revoked one. It overcame the presumption she had revoked her will.

As to republication in duplicate, it will be recalled that there were three witnesses to these triplicate originals — the lawyer, his secretary and the neighbor. Two of the originals were retained in the lawyer's office for safekeeping. It was from those two persons that testatrix retrieved the second original to deliver it into safekeeping elsewhere; so that, even if it be assumed that the will had been revoked, this conduct, with its accompanying declarations, amounted to a republication of those two at once. It is not neces-

sary to discuss what would be the result if only one of them were extant today.

As both are before this court in this proceeding, it suffices to say, in regard to the contestants' last point, that it is immaterial which of the originals was filed for probate, for they are alike and intact throughout.

My conclusion is that the facts on this showing are such as lie outside the rule invoked by the contestants. Any court would hesitate to declare intestacy on such a motion or showing. Had these questions arisen at trial, other facts might be elicited more satisfactorily, and a final judgment on the merits would be in order.

The contestants' cross-motion to dismiss on the papers must be denied; and the original proceeding be deemed continued for the other relief asked therein, such as to particulars of allegations and admissions of facts.

Enter an order in accord with this decision, restoring the proceeding to the adjourned calendar for July 30, 1940, for further action.