In the Matter of the Estate of BRIDGET FLYNN, Deceased.

Surrogate's Court, Monroe County, September 20, 1940.

*Baker & Carver* [*Barton Baker* of counsel], for the proponent.

*J. V. Jones* [*H. J. O'Brien* of counsel], for the contestants.

FEELY, S.   After the decision of the motion with regard to the missing one of the triplicate originals of the last will of this testatrix, the contestants' withdrawal of some of their objections to probate leaves only two matters for trial which are or will be mainly issues of law on such facts as proponent may be able to show, as part of his own case, both to overcome the presumption of revocation arising from the non-production of the missing triplicate, and also to establish due republication of the will as now offered for probate, that is to say, without the production of the third original thereof.

There remains now for consideration the proponent's motion that the non-resident contestants be required to give security for costs.   The fact that an order on the minutes for such relief was made before the factual issues, as to competency and undue influence, were withdrawn as aforesaid, does not forestall consideration of the matter anew, now that the issue has been changed into its present amended state.

Under section 282 of the Surrogate's Court Act the proponent is " entitled, in the discretion of the surrogate, to have the   *   *   * persons raising such issues give security for costs."   Beyond that wording, the practical method of affording this remedy is a matter of influence or judgment either in applying under section 316 of the Surrogate's Court Act to surrogate's practice the law or

rules applicable to practice or procedure in Supreme Court, or in applying the inherent powers of the Surrogate's Court under section 40 of the Surrogate's Court Act, or its powers incidentally enumerated in subdivision 11 of section 20, " with respect to any matter not expressly provided for in the foregoing subdivisions of this section, to proceed, in all matters subject to the cognizance of his court, according to the course and practice of a court having by the common law jurisdiction of such matters, except as otherwise prescribed by statute; and to exercise such incidental powers as are necessary to carry into effect the powers expressly conferred." Any limitation on this power must be such as has been specifically made by statute, for as regards the acquisition of the right to act — as distinct from the manner of using the power granted — a strict construction obtains. The mere omission in some procedural statute to specify the practical or remedial steps to be taken in the use of that power is not such a limitation. The Legislature evidently intended in granting the court the power that the court would find a lawful way by rule to effectuate it, otherwise the grant would be meaningless and useless.

Some are of the opinion that because the Supreme Court procedure applies expressly to a " plaintiff " it cannot be applied to a contestant in probate, inasmuch as the latter is essentially a defendant or respondent, for the matter is a statutory one to the extent above mentioned. A defendant in a Supreme Court matter, not having been mentioned in the Civil Practice Act sections on security for costs, has been held for that reason not to be a party from whom such security can be required, even though he has set up a counterclaim. (*Turmelle* v. *Jefferson*, 166 Misc. 70.) However, in the surrogate's procedure there is a statute that expressly makes a contestant in probate liable to give such security, despite the fact he is essentially a defendant. The rulings, therefore, under the Supreme Court sections, in so far as they rest upon the presence of this word " plaintiff " in the statute, are no authority for limiting the surrogate's express power over a contestant, because this clear difference brings the instant case within the exception in section 316 of the Surrogate's Court Act, which renders the Civil Practice Act and Rules inapplicable in contested probate in Surrogate's Court to the extent that a " contrary intent " is expressed in, or plainly implied from, section 282 of the Surrogate's Court Act.

The question, therefore, resolves itself into an inquiry whether a court that has expressly been empowered by statute to require a contestant in probate to give security for costs is nevertheless

powerless to use that specific power because the statutes fail to specify the precise manner in which it shall be exercised. The question is answered both by subdivision 11 of section 20 of the Surrogate's Court Act, which declares the Surrogate's Court can "exercise such incidental powers as are necessary to carry into effect the powers expressly conferred," and also by section 316 of the Surrogate's Court Act, in so far as it authorizes the surrogate to approximate the Supreme Court practice.

The effect of the special statutory provisions in respect of a contestant in probate is to permit the surrogate to treat such a non-resident party just as a non-resident plaintiff in an action in the Supreme Court would be treated by that court. The statute also gives the surrogate like power over a non-resident petitioner, who is essentially a plaintiff, under another name. The statute (Surr. Ct. Act, § 316) also permits the surrogate to apply the law and rules of Supreme Court practice to proceedings in his court "so far as they can be applied to the substance and subject-matter of a proceeding without regard to its form." The Supreme Court procedure specifies the manner in which the parties are to be put on a footing of equality before it in respect of costs. Under section 1524 of the Civil Practice Act an order is made requiring the plaintiff within a time specified, to pay a fixed sum into court or file an undertaking; and under section 1529, if neither were done, the complaint can be dismissed, on motion. The Surrogate's Court having been empowered to treat a non-resident contestant just as if he were a "plaintiff," possesses the incidental power to order him to pay into court against costs the sum of $250, or give the usual undertaking; and in case he does not comply, then this court has power to dismiss his objections and strike out his answer Were it not for the express statutory authority given by section 282 of the Surrogate's Court Act to the Surrogate's Court, an order of this court requiring a non-resident contestant in probate pending before it to give security for costs, by deposit or undertaking, under penalty of having his objections dismissed, might be held to be a denial of due process of law (*Hovey* v. *Elliott*, 167 U. S. 409; *Landry* v. *Landry*, 215 App. Div. 316); but no such constitutional objection has ever been urged successfully against the ubiquitous statutes requiring a "plaintiff" to give such security — at least in so far as this court is informed; and for the same reason no such objection can well be made good against this statute (Surr. Ct. Act, § 282) that empowers the Surrogate's Court to treat a non-resident contestant as if he were a "plaintiff."

Anent the discretionary basis of such order, the contestants' counsel, having cited the cases mentioned above, adding *Matter of Cusimano* (173 Misc. 382), then takes this position: " However, we prefer to rest our opposition on the rule of discretion, rather than of strict legal right. These contestants ask only that which they would be entitled to have were there no objections. They are not making the proponent incur any expense that he would not have to incur any way. He must produce his witnesses and prove his case, in any event." A prior motion has informed this court that the proponent is seeking to probate a will executed in triplicate, without being able now to produce more than two of the original three. (*Matter of Flynn*, 174 Misc. 565.) The statute directs that " the surrogate must inquire particularly into all the facts and circumstances, and be satisfied with the genuineness of the will and the validity of its execution." (Surr. Ct. Act, § 144.) This obligation must be discharged, even though no objections have been filed. There is no such practice in probate before the surrogate as a judgment by default without application to the court. There are, however, objections still standing against this will that challenge only those matters which the proponent must prove in any event. The nature of this peculiar issue is such that proponent must account for the missing triplicate, and also must prove due republication of the remaining originals.

The cited contestants, even without putting in any objections, would have the right both to cross-examine before the surrogate all of the witnesses the proponent must necessarily call, and also the right to urge likewise the insufficiency of their testimony to sustain the burden resting on the proponent under the case as it now stands. (See *Landry* v. *Landry, supra.*) To treat these respondents as if in so doing they were causing needless work and expense to the proponent, regardless of whether the decree be granted or denied, would seem to be an improper use of discretion in respect of security for costs. If the respondents succeed in finding a flaw in proponent's own case, " where there has not been a contest," they might be awarded costs in the sum of twenty-five dollars; but if the contestants' inquiry fails to turn up to the surrogate any defect in the proponent's case, there is no authority or reason for awarding proponent costs against them, where they have fairly used the rights of inquiry given them by the revision of 1914.

The proponent's motion, in so far as it demands the contestants be required to give security for costs is denied.

Enter an order in accord with this decision.