**UNITED GENERAL INSURANCE EXCHANGE, Appellant,**

v.

**Georgia Ann BROWN, Widow, and Melissa Ann Brown, Minor Child, Appellees.**

No. 9308.

Court of Appeals of Texas, Amarillo.

Feb. 4, 1982.

Crenshaw, Dupree & Milam, Cecil Kuhne, Lubbock, for appellant.

Bob Huff & Associates, Inc., Bob Huff, Robert Teel, Lubbock, for appellees.

Before REYNOLDS, C. J., and DODSON and BOYD, JJ.

DODSON, Justice.

Georgia Ann Brown * and Melissa Ann Brown, the surviving spouse and minor daughter, respectively, of Clyde Roy Brown, brought this action for death benefits under the Worker's Compensation Act. In their pleadings, the plaintiffs alleged that Clyde Roy Brown was fatally injured on 14 August 1978 while in the course of his employment by D. C. Well Service, Inc., the insured employer. United General Insurance Exchange, the defendant insurance carrier, claimed that Brown was not in the course of his employment, because he voluntarily turned aside from the duties of his employment and willingly engaged in horseplay which resulted in his death. The evidence shows that Brown received his fatal injury when he fell from the bed of the employer's pickup truck while the pickup was traveling from a well location in the field to the employer's yard in Sundown, Texas. In response to one special issue, the jury found that Brown received his fatal injury in the course of his employment. The trial court rendered judgment for the plaintiffs.

The defendant appeals from the judgment with five points of error. By its first point, the defendant maintains that the court erred by refusing to grant its motion for a directed verdict because the evidence conclusively established that Brown did not suffer his fatal injury in the course of his employment, because the injury was the result of horseplay. By its second and third points, the defendant challenges the legal and factual sufficiency of the evidence to support the jury's answer to the "course of employment" issue. By its fourth and fifth points, the defendant claims the trial court erroneously admitted certain evidence in response to leading questions. The plaintiffs present two cross-points. They maintain that the trial court abused its discretion by refusing to award them lump sum attorneys' fees on a portion of their recovery, and they request this court to assess defendant additional damages for taking a frivolous appeal. Concluding that the parties' respective positions do not present cause for disturbing the judgment, we affirm.

The defendant's first three points of error require a review of the evidence. Brown was employed by D. C. Well Service, Inc. at Sundown in Hockley County, Texas. He worked on an oil well pulling unit which was mounted on a truck. The pulling unit crew consisted of an operator (Lloyd Smith), a derrick man (Brown), and two floormen (Steven Hogg and Cecil Almeida). On 14 August 1978, the pulling unit was located at a well 12 to 14 miles west of Sundown. The crew's work day began and ended at the company yard in Sundown. Each employee was paid for travel time to and from the yard and the field location. The crew traveled in a company-owned pickup. The pickup was a four-door vehicle with front and back seats.

At approximately 4:00 p. m. on the day in question, the crew completed the pulling operation at the well site. Preparing to

* Georgia Ann Brown has remarried and has taken the name of Georgia Ann Brown Cooper.

move the unit to the company yard in Sundown, the crew cleaned its tools and secured the rig on the truck. When the crew left the well site, Hogg was driving the rig truck, Smith was driving the pickup, Brown occupied the front passenger seat in the pickup, and Almeida was standing on the T-sill located on the back of the rig truck. Almeida guided Hogg, who backed the truck about two hundred yards from the well site to a dirt road. After the truck reached the dirt road, Almeida left the truck and got into the bed of the pickup. As the crew traveled to the yard, the pickup was driven a good distance behind the rig truck, so the crew members in the pickup could watch for articles falling from the truck.

Almeida and Brown were good friends and had engaged in friendly horseplay on the day in question and on other occasions since first beginning to work together at D. C. Well Service, Inc. On this particular day, after Almeida got in the bed of the pickup, he threw some water at Brown through a small opening in the window. Shortly thereafter, Almeida got on top of the pickup's cab and told Smith to stop at the next turn so he could get inside. While Almeida was lying sideways on the cab, Brown rolled down his window and hit Almeida on the leg with a hair brush. As Brown rolled up his window, Almeida slapped Brown on the knuckles.

Smith slowed down and almost came to a stop before he turned onto a county dirt road. At this time, Almeida jumped from the bed on the driver's side of the vehicle and got into the rear seat. At the same time, Brown got out of the cab and jumped into the bed of the pickup. Almeida jumped over the front seat and occupied the passenger's position. From a water can located in the bed of the pickup, Brown first threw some water through a small window panel on Almeida's side of the pickup. Shortly thereafter, he threw the remaining water in the can onto the cab and mostly on the passenger's side of the windshield. The dirt from the county road mixed with the water and caused Smith to turn on the windshield wipers.

The pickup proceeded to the intersection of the county road with the blacktop road, stopped at the intersection, made a 90° turn onto the blacktop road, and proceeded east toward Sundown. Shortly thereafter, Almeida jumped in the backseat of the pickup, got some pineapple juice, and threw the juice at Brown. Almeida returned to the front seat and looked back to see what Brown was doing. The record shows the following questions asked by the defendant's attorney on direct examination and Almeida's answers:

Q What was he [Brown] doing then?

A He was in the back looking around, trying—looking for something to throw at me, I guess.

Q And then what did you do after you saw him looking for something to throw at you?

A I started closing the window.

Q And was your attention on the window or on him at that time?

A It takes two hands to roll up the window.

Q Okay. And then what happened?

A Well, we went a little ways and I turned back to see what he was doing and he wasn't there any more.

The accident occurred on the blacktop road after the pickup had traveled approximately a mile from the intersection. Almeida did not see Brown fall from the pickup.

Hogg, the driver of the rig truck, stated that after both of the vehicles had turned onto the blacktop road he saw the pickup's windshield wipers going and Brown in the pickup's bed. He testified that Brown "was on top of the diesel tank in a kneeling position, what I mean is, he was on his knees, had his arms extended in the air letting the wind blow because it was plenty hot, plenty hot, I guess he was cooling off, didn't have a shirt on, no kind of hat or nothing." The diesel tank was mounted in the front part of the pickup bed. The tank was higher than the sides of the pickup bed. Other evidence shows that the top of the

diesel tank was oily and slick. Hogg did not see Brown fall from the pickup.

While Brown was in the bed of the pickup, Smith, the pickup's driver, could see Brown through the rear window. However, Smith did not see Brown fall from the pickup. Among other things, Smith said that, before the accident happened, he noticed Brown in the back of the pickup "half standing up and half leaning against the diesel tank," looking forward over the top of the pickup. In essence, he also stated that the water throwing incident did not cause Brown to fall from the pickup, because Brown and Almeida had calmed down before the accident and Almeida was sitting in the passenger seat looking down the road. After Brown and Almeida had calmed down, Smith looked into his sideview mirror and saw Brown outside of the pickup's bed. Smith further stated that Brown was hanging onto the left side of the pickup; that he (Smith) hit his brakes to stop; and that after he hit his brakes, he could no longer see Brown through the sideview mirror. After the pickup stopped, Smith and Almeida saw Brown's body lying along the side of the road.

We first consider the defendant's contention that the evidence conclusively established that Brown was not in the course of his employment when he received his fatal injury. The court charged the jury that "'[i]njury in the course of employment' means any injury having to do with and originating in the work, business, trade, or profession of the employer, received by an employee while engaged in or about the furtherance of the affairs or business of his employer, whether upon the employer's premises or elsewhere." The court further charged that "[i]f the employee voluntarily turns aside from the duties of his employment and willingly engages or participates in an act of horseplay or practical joking, an injury resulting from such act is not in the course of employment." Neither instruction is challenged by the parties.

■ Under the "horseplay" instruction, if an employee willingly engages in an act of horseplay and that act of horseplay results in injury to the employee, then the horseplay is a deviation from the employee's course of employment which will defeat a claim for compensation. However, the deviation question is for the trier of the facts, unless the proof is such that reasonable minds can draw only one conclusion from the evidence (*i.e.*, [1] that the employee willingly engaged in an act of horseplay and [2] that such act of horseplay resulted in the injury). *See Lesco Transportation Company, Inc. v. Campbell*, 500 S.W.2d 238, 241 (Tex.Civ.App.—Texarkana 1973, no writ) and other authorities cited therein, including *Southern Surety Co. v. Shook*, 44 S.W.2d 425 (Tex.Civ.App.—Eastland 1931, writ ref'd).

■ From the evidence the jury could have believed that the last act of horseplay engaged in by Brown was the incident where he threw the water onto the cab and windshield. This incident occurred while the pickup was traveling on the county dirt road. After this incident occurred, the pickup traveled approximately one-fourth mile on the county road before turning onto the blacktop road and proceeding on that road for approximately one mile to the point where the fatal accident occurred. The evidence shows that the speed of the vehicle was approximately 30 m.p.h. Under these circumstances, the jury could have concluded that the evidence failed to show an unbroken chain of horseplay events or a particular act of horseplay willingly engaged in by Brown which resulted in his fatal injury. Accordingly, we overrule the defendant's first point of error.

■ In deciding the defendant's legal insufficiency challenge to the jury's answer to the course of employment issue, we must consider the evidence and its reasonable inferences in the light most favorable to the jury's answer and disregard all contrary evidence. *See Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). Applying this standard to the evidence, we conclude that there is ample evidence of probative force to support the jury's answer to the course of employment issue. The defendant's second point of error is overruled.

In deciding the defendant's factual insufficiency challenge to the jury's answer to the course of employment issue, we must consider all of the evidence in support of and contrary to the jury's answer to ascertain if the jury's answer is so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. In the factual recitation stated above, we have not attempted to set forth all of the evidence in the record which is favorable to each party's respective position, and we readily acknowledge the presence of other evidence in the record favorable to the positions of both parties. However, the omitted evidence, unstated only in the interest of brevity, is merely cumulative, not controlling. Still, we have considered all of the evidence and conclude that the jury's answer is not so against the great weight and preponderance of the evidence as to be manifestly wrong or unjust. The defendant's third point is overruled.

By its fourth point of error, the defendant maintains that the trial court committed harmful and prejudicial error by admitting into evidence, over its objection, certain deposition testimony from Lloyd Smith to the effect that there was no company rule against an employee riding in the bed of the pickup, because the evidence was elicited in response to a leading question propounded by the plaintiff to plaintiff's witness. The defendant had caused the deposition of Smith to be taken. At the trial, the defendant did not call Smith nor introduce any portion of his deposition.

Suffice it to state, without setting forth the challenged question, that the question was leading. However, the allowance of leading questions rests within the discretion of the trial court. *Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88, 97 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *Traders & General Insurance Company v. Randolph*, 467 S.W.2d 689, 690 (Tex.Civ.App.—Amarillo 1971, no writ); and 1 Ray, Texas Law of Evidence § 579 (Texas Practice 3d ed. 1980). Furthermore, to establish reversible error, in this instance the defendant must show (1) that the trial

court abused its discretion and (2) that the error was reasonably calculated to cause and probably did cause the rendition of an improper judgment. *Peralez*, at 97, and *Randolph*, at 690. From our review of the entire record, we conclude that the defendant failed to meet its burden. The course of employment issue was the only question for the jury to determine. Whether or not the company had a rule against its employees riding in the bed of the pickup was not a material or controlling issue in the case. The defendant's fourth point is overruled.

With its fifth point, the defendant further claims that the trial court committed harmful and prejudicial error by admitting into evidence over its objection certain other deposition testimony from Smith to the effect that there had been no horseplay by Almeida and Brown for a period of ten to fifteen minutes before the accident occurred. Under this point, the defendant complains of the following question and answer:

Question by plaintiff:
And you volunteered this, they asked you about, "And you know, we were just coming to the yard, he figured he would ride in the back end, liked it back there. They got to messing around.". And you said, "Yeah. But at the time of the accident, they hadn't been messing around for about ten or fifteen minutes." So that is a whole lot of what you said a while ago. In other words, they just, everything for the last ten or fifteen minutes was just as perfect as it has been here in this room?

Answer by Smith:
Well, they settled down for *a while* before the accident, they wasn't do [*sic*] anything just—Cecil was riding in the front seat looking straight ahead, he wasn't talking to me or messing with Clyde or anything. [Emphasis added.]

Smith's answer did not embrace the ten or fifteen minute time interval suggested by the question. The answer is consistent with and merely cumulative of Smith's previous testimony in the record that Brown and Almeida had settled down and had not en-

gaged in horseplay for some period of time before the accident occurred. In our view, the answer is consistent with the sequence of events leading up to the accident. Nevertheless, it was the jury's province to resolve any inconsistency in the evidence. Under these circumstances, we conclude that the defendant failed to discharge its twofold burden of establishing reversible error. The fifth point is overruled.

By their first cross-point and argument thereunder, the plaintiffs maintain that the trial court abused its discretion by refusing to grant them lump sum attorney's fees on the award of future compensation benefits for Melissa Ann Brown, the minor child. In support of their position, the plaintiffs rely on *Texas Emp. Ins. Ass'n v. Flores*, 564 S.W.2d 831 (Tex.Civ.App.— Forth Worth 1978, writ ref'd n.r.e.), and *Texas Emp. Ins. Ass'n v. Miller*, 596 S.W.2d 621 (Tex.Civ.App.—Waco 1980, no writ). In this instance, *Flores* and *Miller* are not controlling. From the record before us, the plaintiffs have failed to show that, as a matter of law, they are entitled to recover lump sum payment of attorney's fees under Section 8(d), Article 8306, Tex.Rev.Civ.Stat. Ann. (Vernon Supp.1982). *See Walters v. Fidelity & Cas. Co. of New York*, 611 S.W.2d 934, 937–38 (Tex.Civ.App.—Eastland 1981, writ ref'd n.r.e.); and *Walden v. Royal Globe Ins. Co.*, 577 S.W.2d 296, 297–300 (Tex.Civ.App.—Beaumont 1978, writ ref'd n.r.e.). Under these circumstances, we conclude that the trial court did not abuse its discretion by refusing to grant lump sum payment of attorney's fees on the award of future compensation benefits for Melissa Ann Brown, the minor child. The plaintiffs' first cross-point is overruled.

With their second cross-point, the plaintiffs seek to invoke Rule 438 of the Texas Rules of Civil Procedure. This rule provides:

> Where the court shall find that an appeal or writ of error has been taken for delay and that there was no sufficient cause for taking such appeal, then the appellant, if he be the defendant in the court below, shall pay ten per cent on the amount in dispute as damages, together with the judgment and interest and costs of suit thereon accruing.

As stated in *Trinity Universal Insurance Company v. Farley*, 408 S.W.2d 776, 780 (Tex.Civ.App.—Tyler 1966, no writ):

> The right to appeal is a most sacred and valuable one and unless the record on appeal is such as to justify the conclusion that the appellant, at the time his appeal was perfected, had no reasonable ground to believe that the judgment should be reversed, he should not be penalized for availing himself of the right of appeal.

Although we have overruled all of the defendant's points of error, we are unwilling to say that the appeal was taken for delay and without sufficient cause. The defendant's factual insufficiency challenge presented a serious question for this court to determine. Under the record before us and notwithstanding the defendant's other points of error and contentions, the factual insufficiency challenge is sufficient to preclude this court from invoking the penalty provisions of Rule 438. The plaintiffs' second cross-point is overruled.

In summary, we overrule the defendant's five points of error and the plaintiffs' two cross-points. The judgment of the trial court is affirmed.