In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-07-00084-CV


______________________________





IN RE: ESTATE OF LESLIE WAYNE WILSON, DECEASED






 


On Appeal from the County Court at Law Number One


Johnson County, Texas


Trial Court No. P200619089




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Carter



O P I N I O N



 Brett Lee Wilson brings this restricted appeal from the trial court's order admitting the will
of his father, Leslie Wayne Wilson, to probate. We will reverse and remand the case to the trial
court for further proceedings. 

1. Factual and Procedural Background 

 Shelli Kay Wilson (1) filed an application to probate the will and issuance of letters
testamentary December 20, 2006. Shelli and Leslie had drafted the will themselves based on some
form wills they had found on the Internet. After the deceased's death, the original will could not be
located. Brett received service of citation by certified mail December 23, 2006. Shelli then filed an
amended application January 3, 2006. The trial court held a hearing January 19, 2007, and admitted
a copy of the will to probate. Brett did not timely file a contest and did not appear at the hearing. 
At the hearing, Shelli testified Brett did not intend to oppose the application. On March 22, 2007,
Brett filed a motion for new trial and an opposition to the probate of the will. Brett argued the
motion was timely under Rule 306a of the Texas Rules of Civil Procedure. (2) The trial court refused
to grant Brett's motions. 

 On June 11, 2007, Brett filed a notice of appeal. (3) On appeal, Brett raises three issues: 1) the
applicant failed to overcome the presumption that the will had been revoked; 2) the applicant failed
to substantially prove the contents of the lost will by the testimony of a credible witness who has
read the will or heard it read; and 3) the applicant failed to serve the appellant with a copy of the
applicant's first amended application to probate the will and issuance of letters testamentary. 
Although Shelli was not required to provide Brett with notice of the amended application, we
conclude the evidence rebutting the presumption of revocation was legally insufficient. 

2. The Requirements to Bring a Restricted Appeal

 To prevail on a direct attack on a judgment by a restricted appeal, an appellant 

 must establish that: (1) [he or she] filed notice of the restricted appeal within six
months after the judgment was signed; (2) [he or she] was a party to the underlying
lawsuit; (3) [he or she] did not participate in the hearing that resulted in the judgment
complained of and did not timely file any postjudgment motions or requests for
findings of fact and conclusions of law; and (4) error is apparent on the face of the
record.


Alexander v. Lynda's Boutique, 134 S.W.3d 845, 848 (Tex. 2004); see also Tex. R. App. P. 26.1(c),
30. 

 Review by a restricted appeal affords an appellant essentially the same scope of review as
an ordinary appeal, that is, a review of the entire case. See Gunn v. Cavanaugh, 391 S.W.2d 723,
724 (Tex. 1965). The only restriction on the scope of review in a restricted appeal is that the error
must appear on the face of the record. See Gen. Elec. Co. v. Falcon Ridge Apartments, Joint
Venture, 811 S.W.2d 942, 943 (Tex. 1991); cf. Flores v. H.E. Butt Grocery Co., 802 S.W.2d 53, 55
(Tex. App.--Corpus Christi 1990, no writ). "[E]vidence not before the trial court prior to final
judgment may not be considered" in a restricted appeal. Gen. Elec. Co., 811 S.W.2d at 944. The
face of the record, for purposes of a restricted appeal, consists of all the papers on file in the appeal,
including the statement of facts, i.e., the reporter's record. DSC Fin. Corp. v. Moffitt, 815 S.W.2d
551 (Tex. 1991); Laas v. Williamson, 156 S.W.3d 854, 857 (Tex. App.--Beaumont 2005, no pet.);
see Allstate Ins. Co. v. Century Bank, N.A., No. 06-03-00140-CV, 2004 Tex. App. LEXIS 4998 (Tex.
App.--Texarkana June 4, 2004, no pet.) (mem. op.). 

 It is uncontested that Brett filed a notice of appeal within six months of the judgment, was
a party to the underlying suit, and did not participate at the hearing. The trial court refused to grant
Brett's postjudgment motion to extend the time periods under Rule 306a, and Brett has not
challenged the refusal on appeal. Because the time periods were not extended, Brett's postjudgment
motions were not timely. Thus, the only contested issue is whether error is apparent on the face of
the record.

3. Notice of the Amended Application

 Brett claims, in his third point of error, that the trial court erred in admitting the will to
probate because Shelli failed to provide him notice of the amended application. On January 3, 2007,
Shelli filed an amended application which was not served on Brett. Shelli claims she complied with
all notice procedures under Section 33 of the Texas Probate Code and, in the alternative, there is no
reversible error because the only difference between the pleadings was the correction of the numeric
age of the applicant. 

 Brett relies upon Rule 21 and 21a of the Texas Rules of Civil Procedure. Under those rules,
any amended pleading must be served on a nonanswering party. See Tex. R. Civ. P. 21, 21a. This
Court has held the service must be made regardless of whether the amended pleading seeks a more
onerous judgment or adds a new cause of action. Sw. Constr. Receivables, Ltd. v. Regions Bank, 162
S.W.3d 859, 865 (Tex. App.--Texarkana 2005, pet. denied). Southwest Construction Receivables,
though, was not a probate case.

 Both the Dallas and the Fourteenth District Courts of Appeals have held "the Texas Rules
of Civil Procedure apply to will contests only to the extent they do not differ from the procedure
established by the Probate Code." (4) Wojcik v. Wesolick, 97 S.W.3d 335, 338 (Tex. App.--Houston
[14th Dist.] 2003, no pet.); see Bank of Tex., N.A., Trustee v. Mexia, 135 S.W.3d 356, 362 (Tex.
App.--Dallas 2004, pet. denied). Section 33(a) provides:

 No person need be cited or otherwise given notice except in situations in which this
Code expressly provides for citation or the giving of notice; provided, however, that
even though this Code does not expressly provide for citation, or the issuance or
return of notice in any probate matter, the court may, in its discretion, require that
notice be given, and prescribe the form and manner of service and return thereof. 


Tex. Prob. Code Ann. § 33(a) (Vernon 2003). Further, subsection (j) of Section 33 allows any
interested party to request to be notified of "any and all, or of any specifically designated, motions,
applications, or pleadings . . . ." Tex. Prob. Code Ann. § 33(j) (Vernon 2003). 

 Brett argues Rules 21 and 21a apply to probate proceedings because the Texas Probate Code
does not affirmatively state service is not required. Brett's argument is similar to the arguments
rejected by the Fourteenth District. In Wojcik, the Fourteenth District held Rule 39 of the Texas
Rules of Civil Procedure, which requires joinder of necessary parties, conflicts with the
unambiguous language of Section 33(a). 97 S.W.3d at 338. Because the parties were not required
to be joined or given notice under Section 33, the court held Rule 39 did not apply. Id. Similarly,
we conclude Rule 21, which differs from the exclusive notice procedures contained in Section 33,
does not apply to will contests. Shelli was not required to provide Brett with notice of her amended
petition. We overrule Brett's third point of error.

4. Legal Sufficiency of Evidence to Support a Finding that the Presumption of Revocation
Was Rebutted


 In his first point of error, Brett argues the evidence was insufficient to support the trial court's
finding that the presumption of revocation was rebutted. The proponent of the will is required to
prove the will has not been revoked. Tex. Prob. Code Ann. § 88(b)(3) (Vernon 2003). The Texas
Supreme Court has held a party can challenge the legal sufficiency of the evidence in a restricted
appeal. Norman Commc'ns v. Tex. Eastman Co., 955 S.W.2d 269, 270 (Tex. 1997). 

 Evidence is legally insufficient only when (a) there is a complete absence of evidence of a
vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only
evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than
a mere scintilla, or (d) the evidence establishes conclusively the opposite of the vital fact. Uniroyal
Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334 (Tex. 1998); see City of Keller v. Wilson, 168
S.W.3d 802, 810 (Tex. 2005). The final test for legal sufficiency must always be whether the
evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. 
City of Keller, 168 S.W.3d at 827. Whether using the inclusive or exclusive standard of review, we
view the evidence in the light most favorable to the verdict, crediting favorable evidence if
reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Id. 
A reviewing court must not substitute its judgment for that of the trier of fact and must indulge every
reasonable inference in favor of the verdict. Id.

 One of the methods by which a will can be revoked is by destroying the original copy of the
will. Tex. Prob. Code Ann. § 63 (Vernon 2003). The evidence at trial established the original will
was in the deceased's possession and could not be located after his death. When a will was last
known to be in the decedent's possession and cannot be located after death, a rebuttable presumption
of revocation arises. In re Estate of Capps, 154 S.W.3d 242, 245 (Tex. App.--Texarkana 2005, no
pet.) (op. on reh'g); see O'Brien v. Stanzel, 603 S.W.2d 826, 827 (Tex. 1980). The "presumption can
be overcome by proof and circumstances contrary to the presumption" or evidence that the will "was
fraudulently destroyed by some other person." Capps, 154 S.W.3d at 245. The standard of proof
necessary to rebut the presumption is now preponderance of the evidence. Id. at 246. 

 This Court has stated the recognition of a will's continued validity and the testator's continued
affection for the chief beneficiary thereunder, without evidence tending to show the decedent's
dissatisfaction with the will or any desire to cancel or change the will, is sufficient to rebut the
presumption of revocation of a missing original will. Id. at 245; see Sparkman v. Massey's Estate,
297 S.W.2d 308 (Tex. Civ. App.--Dallas 1956, writ ref'd n.r.e.). (5)

 The record does not contain any direct evidence of why the original could no longer be
located. Shelli testified she was the spouse of the deceased and they were both residents of Johnson
County at the time of his death. In the proof of death and other facts, Shelli states, "As far as I know
and believe, Decedent left a will dated August 25, 2004 and never revoked." It is well established
under Texas caselaw that an affidavit, based on the affiant's "best knowledge and belief," is no
evidence of the facts asserted. Teixeira v. Hall, 107 S.W.3d 805, 809 (Tex. App.--Texarkana 2003,
no pet.); see, e.g., Ryland Group, Inc. v. Hood, 924 S.W.2d 120, 122 (Tex. 1996); Humphreys v.
Caldwell, 888 S.W.2d 469, 470 (Tex. 1994); Burke v. Satterfield, 525 S.W.2d 950, 955 (Tex. 1975);
Lee v. Lee, 43 S.W.3d 636, 640-41 (Tex. App.--Fort Worth 2001, no pet.). The phrase "[a]s far as
I know and believe" is the functional equivalent, being based on the affiant's best knowledge and
belief. "An affidavit which does not positively and unqualifiedly represent the facts as disclosed in
the affidavit to be true and within the affiant's personal knowledge is legally insufficient." 
Humphreys, 888 S.W.2d at 470. Shelli's conclusory statement in the proof of death and other facts
was no evidence that the will had not been revoked.

 This case is distinguishable from Capps. Unlike Capps, there was no evidence of continued
affection or, more importantly, any evidence the deceased had recognized the will's continued
validity. (6) In order to find the presumption was revoked, one must assume there was continued
affection because the parties remained married. Even if that were assumed, the evidence falls short
of the evidence in Capps where the testator continued to recognize the validity of his will. "Less
than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere
surmise or suspicion' of a fact." King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003)
(quoting Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983)). The evidence presented by
Shelli was no more than a mere scintilla of evidence to rebut the presumption of revocation. The
evidence was legally insufficient. Because we have found the evidence rebutting the presumption
of revocation was legally insufficient, it is not necessary for this Court to decide Brett's remaining
issue. (7) There is error apparent on the face of the record; we sustain Brett's first point of error.

Conclusion

 Although Shelli was not required to provide Brett notice of the amended petition, the
evidence was insufficient to rebut the presumption of revocation. These conclusions require us to
consider what remedy is appropriate in this case. When an appellate court sustains a legal
sufficiency issue, the ordinary remedy is to reverse and render. Holt Atherton Indus., Inc. v. Heine,
835 S.W.2d 80, 86 (Tex. 1992); United States Fire Ins. Co. v. Carter, 473 S.W.2d 2, 3 (Tex. 1971). 
The Texas Rules of Appellate Procedure provide "the court must render the judgment that the trial
court should have rendered, except when: . . . the interests of justice require a remand for another
trial." Tex. R. App. P. 43.3.

 In his brief, Brett merely requested this Court to "reverse the trial court's judgment and
remand this case . . . and that Appellant have such other and further relief to which Appellant may
show himself justly entitled." A court should generally not grant greater relief than requested by the
prevailing party. Horrocks v. Tex. Dep't of Transp., 852 S.W.2d 498, 499 (Tex. 1993). We further
note authorities allowing a case to be reversed and remanded for legally insufficient evidence when
"the facts have not been fully developed," such as in a post-answer default judgment, and remand
would be appropriate "in the interests of justice." (8) 

 An uncontested probate hearing is similar to a default judgment hearing. Although evidence
must be presented, the proceedings are often abbreviated and perfunctory. The reporter's record in
this case consists of approximately eleven pages of testimony. Only one party was present and
presented evidence at trial. There was no adverse party to challenge the evidence. Because there
was no contest to the probating of the will, it is likely the facts were not fully developed. We do not
believe it is just or desirable public policy for a party, who failed to diligently protect his rights in
the trial court, to be placed in a better position in a restricted appeal than a party who did diligently
protect his or her rights below. Under the circumstances of this case, we conclude it is in the interest
of justice to remand this case rather than render judgment. Because Brett requested a remand in his
brief, the facts were not fully developed, and remand would be appropriate in the interest of justice,
we reverse the judgment of the trial court and remand this case for further proceedings consistent
with this opinion.




 Jack Carter 

 Justice


Date Submitted: March 11, 2008

Date Decided: April 9, 2008

1. Shelli Kay Wilson was married to Leslie at the time of his death and was Brett's stepmother. 
Leslie had been divorced twice before marrying Shelli. Brett was twenty-six years old at the time
of the motion for new trial. Since both parties have the same last name, we will refer to their first
names. 
2. See Tex. R. Civ. P. 306a. Brett did not hire an attorney until after the trial court admitted
the will to probate. Brett testified he lives in Kansas City, Missouri, and had been attempting to hire
an attorney in Missouri. Brett's Texas attorney discovered the order admitting the will to probate
March 18, 2007. At the hearing, Brett testified he had not been served with the amended petition,
and the record contains no evidence to the contrary. Brett also testified he was not served with the
trial court's order admitting the will to probate and did not receive actual knowledge of the order
until March 13, 2007. Brett argued his motions were timely under Rule 306a because he did not
receive notice of the trial court's order. If a party does not receive notice or acquire actual knowledge
of the judgment within twenty days of the date the judgment is signed, Rule 306a provides that time
periods shall begin to run on the date the party actually acquires notice or "actual knowledge of the
judgment but in no event can the thirty-day period begin after more than ninety days have passed
since the judgment was signed." Ward v. Parham, 198 S.W.3d 861, 863 (Tex. App.--Texarkana
2006, no pet.) (holding denial of Rule 306a not separately appealable). Shelli testified at the hearing
that she had given Brett notice the trial court had signed the order. Because the trial court refused
to find Brett did not receive notice within twenty days of the order, Brett's motion for new trial was
not timely.
3. Brett originally filed an ordinary notice of appeal. This case was transferred to this Court
from the Waco Court of Appeals as part of the Texas Supreme Court's docket equalization program. 
In response to a defect letter from this Court, Brett filed an amended notice of restricted appeal. See
Tex. R. App. P. 25.1.
4. We note the Beaumont Court of Appeals has held notice in excess of the provisions of the
Texas Probate Code may be required in certain circumstances where the provisions of the Texas
Probate Code are constitutionally inadequate. See Kotz v. Kotz, 613 S.W.2d 760, 761 (Tex. Civ.
App.--Beaumont 1981, no writ) (admitting that Probate Code does not require citation and notice
for will contests but requiring notice to avoid constitutional problems). Brett does not argue the
notice provisions of the Texas Probate Code are unconstitutional in this case.
5. We note the Fourteenth District has held evidence of continued affection, standing alone,
was insufficient to rebut the presumption of revocation. See Berry v. Griffin, 531 S.W.2d 394, 397
(Tex. Civ. App.--Houston [14th Dist.] 1975, writ ref'd n.r.e.). However, the burden of proof at the
time was the clear and convincing evidence standard. 
6. We note Shelli also cites In re Estate of Jones, 197 S.W.3d 894 (Tex. App.--Beaumont
2006, pet. denied), for the proposition that the evidence was sufficient to rebut the presumption of
revocation. However, the presumption of revocation was not an issue in Jones. The sole issue was
whether "an accurate photocopy of a valid unrevoked 'lost' will may be admitted to probate without
the testimony of a credible witness who read the 'lost' will or heard it read." See id. at 896.
7. In his second point of error, Brett argues the trial court erred by admitting the will to probate
because Shelli failed to provide testimony as to the contents of the original will and Shelli was not
a credible witness under Section 85 of the Texas Probate Code. See Tex. Prob. Code Ann. § 85
(Vernon Supp. 2007). Shelli argues on appeal that Section 85 does not apply because a clearly
legible copy of the will with a signature was admitted to probate and, in the alternative, Shelli's
testimony was sufficient to satisfy Section 85. In essence, this point of error alleges the evidence is
insufficient. Because we have found the evidence legally insufficient to rebut the presumption of
revocation, it is not necessary for us to determine whether Section 85 applies to this case or whether
the evidence was sufficient to meet the requirements of Section 85.
8. See, e.g., Heine, 835 S.W.2d at 86 (remand for new trial on issue of unliquidated damages);
Carter, 473 S.W.2d at 3 (holding court of appeals was authorized to remand in the interest of justice
and refusing writ of error); Davis v. McCully, No. 02-05-00072-CV, 2006 Tex. App. LEXIS 415
(Tex. App.--Fort Worth Jan. 19, 2006, no pet.) (mem. op.) (post-answer default judgment reversed
and remanded when there was legally insufficient evidence of the nurse's standard of care);
Armstrong v. Benavides, 180 S.W.3d 359, 364 (Tex. App.--Dallas 2005, no pet.) (holding evidence
of conversion in a default judgment was legally insufficient and remanding for new trial); Glassel
v. Byrum, No. 14-99-00932-CV, 2000 Tex. App. LEXIS 3412 (Tex. App.--Houston [14th Dist.]
May 25, 2000, no pet.) (not designated for publication) (post-answer default judgment remanded
when evidence of causation was legally insufficient and party requested remand); N. Dallas
Diagnostic Ctr. v. Dewberry, 900 S.W.2d 90, 97 (Tex. App.--Dallas 1995, writ denied) (holding
trial court erred in admitting expert causation testimony and remanding for new trial); see also 10
William V. Dorsaneo III, Texas Litigation Guide § 150.05 (LEXIS current through 2008).


>Tex. Lab. Code Ann. § 406.032(1)(C) (Vernon 1996);
see Bomar, 9 S.W.3d at 807. 
            The court in Bomar concluded the hospital established as a matter of law that the personal
animosity exception did not apply to the nurses' injuries. Bomar, 9 S.W.3d at 807. In fact, the
summary judgment record established the contrary: that the incidents of sexual harassment occurred
while the plaintiffs were performing their jobs and while Boyett was performing his. Id. The record
contained no evidence Boyett ever harassed the nurses outside the workplace. Id. Rather, the
harassment occurred only at the hospital. Id. That is, the conditions attached to the workplace acted
as factors in bringing about the "catastrophic combination" leading to the injury. Nasser v. Sec. Ins.
Co., 724 S.W.2d 17, 19 (Tex. 1987). The plaintiffs' affidavits describing the interaction with Boyett
as "having nothing to do with my work" and occurring for "reasons that were personal" to Boyett
were conclusory and insufficient to raise a fact issue, making summary judgment for the hospital
proper since it established as a matter of law that the nurses' injuries did not fall within the personal
animosity exception. Bomar, 9 S.W.3d at 807.
            The court concluded that the injuries occurred in the course and scope of employment, that
they did not fall within the personal animosity exception, and that they were compensable under the
TWCA. See id. at 807-08. The hospital, therefore, was protected from this negligence suit under
the TWCA's exclusive remedy rule. See id. at 808. The court very specifically stated it was not
passing on the issue of whether the TWCA may also bar claims for any noncompensable injuries. 
Id. at 806 n.4. 
C. Application and Implications
            The case at bar poses similar issues to this Court. The trial court's summary judgment
concluded that Six Flags established as a matter of law the defense of the TWCA as an exclusive
remedy and a bar to Vasquez' claims. This Court also must address the horseplay exception, an
exception covering different facts, but having the same effect as the personal animosity exception
at issue in Bomar. See Tex. Lab. Code Ann. § 406.032(2). A finding here that the horseplay
exception applied would render the injury a noncompensable one in the same way a finding that the
personal animosity exception applied would have in Bomar. 
            Here, the trial court did not make an explicit finding on the compensability of Vasquez'
injury. However, we find the summary judgment evidence establishes as a matter of law that the
horseplay exception is inapplicable. 
            The workers' compensation insurance carrier is relieved from paying benefits to an injured
employee if the injury is caused by the employee's horseplay. Tex. Lab. Code Ann. § 406.032
(Vernon 1996). Horseplay has also been considered as a deviation from the course and scope of
employment and, thus, not an injury covered by the Act. See United Gen. Ins. Exch. v. Brown, 628
S.W.2d 505, 509 (Tex. App.‒Amarillo 1982, no writ); Mejia v. Liberty Mut. Ins. Co., 544 S.W.2d
690, 691 (Tex. App.‒Houston [14th Dist.] 1976, no writ); Tex. Indem. Ins. Co. v. Dunlap, 68 S.W.2d
664, 666 (Tex. App.‒Beaumont 1934, writ ref'd). Several cases have held that, when an employee
turns aside from his or her employment and willingly engages in acts such as practical joking,
scuffling, or "fooling," the employee is engaged in horseplay. Mejia, 544 S.W.2d at 691 (practical
joking); Richardson v. Tex. Employers' Ins. Ass'n, 46 S.W.2d 439 (Tex. Civ. App.‒Beaumont 1932,
writ ref'd) (employee kicking another, precipitating a fight). 
            The summary judgment evidence from the deposition testimony of Vasquez and coworker
Jacob Spencer establishes that Vasquez was in the course and scope of employment when the injury
occurred. Vasquez testified he was working at the time of the injury for Six Flags Waterworld. The
purpose of the lifeguards' riding down the tube before the ride opened was for "basic safety
checking." That morning, Vasquez was asked by a lead guard, Aaron Asbrey, if he wanted to
conduct the safety test ride. Vasquez further testified the ride began normally, but when they took
a turn, the tube went higher than usual. He looked up and saw somebody coming toward him, and
he landed on Vasquez' head, at which time he lost consciousness. 
            Spencer, who also was riding in the tube when Vasquez was injured, testified that part of his
job was to inspect the tubes and make sure they were safe for people to ride. This involved riding
the tube and determining whether it was operating correctly. There is some testimony by each of
them that some of the straps on the ride were missing and that the number of occupants in the ride
exceeded recommended capacity. However, this evidence at most is some evidence of negligence
on the part of Vasquez, not that he had deviated from his duties and was engaged in horseplay. 
VI. CONCLUSION
            We find that Vasquez was performing his duties within the scope and course of his
employment at the time of the injury and that he was not engaged in horseplay. The workers'
compensation remedy is exclusive, and Vasquez is barred from pursuing a negligence claim against
his employer. Further, we find the evidence precludes a finding of intentional action by the employer
as a cause of the injury. 
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter 
                                                                        Justice

Date Submitted:          August 28, 2003
Date Decided:             October 21, 2003